UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CARSON OPTICAL, INC. and LEADING
EXTREME OPTIMIST INDUSTRIES, LTD.,

       Plaintiffs,       **MEMORANDUM AND
ORDER**
CV 11-3677 (ARL)

   -against-

PRYM CONSUMER USA, INC. and
JO-ANN STORES, INC.,

       Defendants.
-------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

  Plaintiff Carson Optical, Inc. ("Carson Optical" or "Carson"), a New York corporation

that markets and sells optical products, and plaintiff Leading Extreme Optimist Industries, Ltd.

("Leading'), a Hong Kong company that manufactures optical products (collectively "plaintiffs"),

commenced this action on July 29, 2011 against defendant Prym Consumer USA, Inc. ("Prym"),

a manufacturer of magnification products, and commenced an action on January 6, 2012 against

defendant Jo-Ann Stores, Inc., a retailer of Prym's products ("Jo-Ann Stores") (collectively

"defendants"), alleging patent infringement under 35 U.S.C. § 271 *et seq*., trade dress

infringement under the Lanham Act, 15 U.S.C. § 1125(a), and state law claims for unfair

competition and tortious interference with prospective business relations in connection with four

of plaintiff Carson Optical's design patents.  All of the claims relate to magnifiers that were sold

by Prym to Jo-Ann Stores, and then sold at retail by Jo-Ann Stores.  By order dated March 9,

2012, the district court consolidated the two actions.  The parties have consented to the

undersigned's jurisdiction pursuant to 28 U.S.C. § 636.  Before the Court are each defendants'

motions for partial judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  For the reasons

set forth below, defendants' motions are granted.

## BACKGROUND

For purposes of this decision, the Court accepts as true the factual allegations set forth in the amended complaint against defendant Jo-Ann Stores and in the second amended complaint against defendant Prym, and documents attached thereto.  Carson Optical markets and sells optical products throughout the country to retailers, including until recently, Jo-Ann Stores. (Am. Compl. ¶¶ 2, 29; Second Am. Compl. ¶¶ 2, 29.)  At issue in this case are four of Carson Optical's design patents, to wit, U.S. Patent Nos. D495,726 S ("the '726 Patent"), D563,779 S ("the '779 Patent'), D508,063 S ("the '063 Patent"), and D613,437 S ("the '437 Patent"), which were issued by the United States Patent and Trademark Office.  (Am. Compl. ¶¶ 8-19, 28-29; Second Am. Compl. ¶¶ 8-19, 28-29.)  The commercial embodiment of the '726 Patent is a product that bears the trademark RimFree.  (Am. Compl. ¶ 11; Second Am. Compl. ¶ 11.)  The commercial embodiment of the '779 Patent is a product that bears the trademark Attach-A-Mag. (Am. Compl. ¶ 15; Second Am. Compl. ¶ 15.)  The commercial embodiment of the '063 Patent is a product that bears the trademark Attach-a-Mag.  (Am. Compl. ¶ 19; Second Am. Compl. ¶ 19.)   The claim for the '437 Patent is the ornamental design for an illuminating magnifier.  (Am. Compl. ¶ 28; Second Am. Compl. ¶ 28.)

The designs of certain of Carson Optical's products, such as the SureGrip[1] and the Clip &

---

[1]In September 1998, Carson adopted an ornamental design and overall appearance for a magnifier, which has been marketed and sold under the trademark SureGrip.  (Am. Compl. ¶¶ 20-23; Second Am. Compl. ¶¶ 20-23.)  Since that time, Carson has marketed, promoted and sold magnifiers comprising the design, which have become a marketing success.  (*Id.*)

Flip[2], are not protected by design patents but have been marketed, promoted and sold under their trademarks.  (Am. Compl. ¶¶ 20-27; Second Am. Compl. ¶¶ 20-27.)  The SureGrip™ and the Clip & Flip™ products have been a commercial success.  (*Id.*)  Carson Optical has also developed written materials, including packaging materials which describe the features and benefits of its Clip & Flip™ magnifier, and owns the copyright in the written marketing materials.  (Am. Compl. ¶¶ 26-27; Second Am. Compl. ¶¶ 26-27.)

According to Carson Optical, Prym secured a manufacturer to copy and reproduce Carson Optical's products, and Jo-Ann Stores conspired with Prym to accomplish this.  (Am. Compl. ¶ 30; Second Am. Compl. ¶ 30.)   Specifically, plaintiffs allege that Prym imported, offered for sale and sold (i) a magnifier that infringes the '726 Patent; (ii) a product that infringes the '779 Patent; (iii) a product that infringes the '063 Patent; (iv) a magnifier that is a copy of Carson Optical's SureGrip™ magnifier and infringes Carson's trade dress rights; (v) a copy of Carson Optical's Clip & Flip™ magnifier; and (vi) a pocket magnifier product that infringes the '437 Patent.  (Second Am. Compl. ¶¶ 31-37.)  In addition, plaintiffs aver that Prym copied portions of Carson Optical's written marketing materials associated with the Clip & Flip™ magnifier.  (*Id.*)  Plaintiffs allege that  Jo-Ann Stores offered for sale and sold (i) a magnifier that infringes the '726 Patent; (ii) a product that infringes the '779 Patent; (iii) a product that infringes the '063 Patent; (iv) a magnifier that is a copy of Carson Optical's SureGrip™ magnifier and infringes Carson's trade dress rights; (v) a copy of Carson Optical's Clip & Flip™ magnifier; (vi) a pocket magnifier product that infringes the '437 Patent; and (vii) written marketing materials associated

---

[2]In October 1998, Carson adopted a design for a magnifier that is currently sold under the trademark Clip & Flip, and since that time has marketed, promoted and sold the magnifier, which has become a commercial success.  (Am. Compl. ¶¶ 23-25; Second Am. Compl. ¶¶ 23-25.)

3

with the Clip & Flip™ magnifier. (Am. Compl. ¶¶ 31-37.)  Because of defendants' alleged

infringement, plaintiffs maintain that Prym displaced Carson Optical as a supplier to Jo-Ann

Stores.  (Am. Compl. ¶ 38; Second Am. Compl. ¶ 38.)

Plaintiffs commenced the instant action against defendants, alleging (i) infringement of

the design patents; (ii) infringement of trade dress; and (iii) common law claims for unfair

competition and tortious interference with prospective business relations.  Defendants now seek

to dismiss plaintiffs' common law tort claims and trade dress infringement claim, specifically

Counts Four, Six and Seven in the amended complaint against Jo-Ann Stores and Counts Seven,

Ten and Eleven in the second amended complaint against Prym.

## DISCUSSION

### (A)   Legal Standard for Motion for Judgment on the Pleadings

In deciding a motion pursuant to Fed. R. Civ. P. 12(c), the Court employs "the same . . .

standard applicable to dismissals pursuant to [Rule] 12(b)(6)."  *L-7 Designs, Inc. v. Old Navy,*

*LLC*, 647 F.3d 419, 429 (2d Cir. 2011).  "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation

of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550

U.S. at 557).

The Court must accept "as true all allegations in the complaint and draw all reasonable

inferences in favor of the non-moving party."  *Matson v. Bd. of Educ. of the City Sch. Dist. of*

*N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (internal quotation marks and citation omitted); *see also*

*Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief").  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

"On a [Rule] 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case."  *L-7 Designs, Inc.*, 647 F.3d at 422 (internal quotation marks and citation omitted).  "A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint."  *Id.* (internal quotation marks and citations omitted).

**(B)     Plaintiff's Common Law Claims**

Plaintiffs assert two common law claims for unfair competition and tortious interference with prospective business relations against defendants.[3]  With respect to defendant Prym, the allegations underlying these two claims are identical and aver Prym has engaged in conduct constituting common law unfair competition and tortious interference with prospective business relations by:

_____

[3]Plaintiffs' common law claims against defendant Prym include both the Tenth Count (common law unfair competition) and Eleventh Count (tortious interference with prospective business relations) in the second amended complaint and are essentially the same as the common law claims against defendant Jo-Ann Stores in the Sixth and Seventh Counts in the amended complaint.  Defendant Jo-Ann Stores joins in the arguments made by Prym in its motion papers.

5

a.   Copying and reproducing Carson's products, including the RimFree™ and SureGrip™ magnifiers, the Clip & Flip™ magnifier and the Attach-A-Mag™ product;

b.   Providing knock-offs of Carson's products to Jo-Ann Stores;

c.   Securing of Jo-Ann Stores as a customer by importing, offering for sale, and selling products that infringe Carson and Leading's intellectual property rights;

d.   Copying portions of Carson's written marketing materials associated with the Clip & Flip™ magnifier;

e.   Systematically infringing Carson's and other's intellectual property rights, including the '726 Patent, and thereby unfairly competing with Carson; and/or

f.   Displacing Carson as a supplier to Jo-Ann Stores by illegally copying Carson's product(s).

(*See* Second Am. Compl., ¶¶ 97, 103.)  With respect to defendant Jo-Ann Stores, the allegations

are likewise identical and assert that Jo-Ann Stores has engaged in conduct constituting

common law unfair competition and tortious interference with prospective business relations by:

a.   Copying and reproducing, with the assistance of another, one of its supplier's products, including Carson's RimFree™ and SureGrip™ magnifiers, the Clip & Flip™ magnifier and the Attach-A-Mag™ product;

b.   Securing and selling to the consuming public a line of knock-off products;

c.   Eliminating Carson as a long-time supplier by systematically copying Carson's products and violating its intellectual property rights in the process;

d.   Selling products with marketing materials that contained copied portions of Carson's written marketing materials;

e.   Systematically infringing Carson's and other's intellectual property rights, including patent rights, trade dress rights and/or copyright rights, and thereby unfairly harming Carson;

f.   Even after ceasing its campaign of infringing activity refusing to continue its long-time supplier relationship with Carson; and/or

g.   Pretending to fairly evaluate Carson as a supplier with no intention of continuing its business relationship with Carson.

(*See* Am. Compl., ¶¶ 73, 79.)  Defendants argue that plaintiffs' state law claims are preempted by

federal patent law.

**(1)   Preemption of Common Law Torts**

"Federal Circuit law governs whether federal patent law preempts a state law claim."

6

*Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1376 (Fed. Cir. 2005).  A state law claim is preempted if it "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* at 1377 (quoting *Aronson v. Quick Point Pencil Co.,* 440 U.S. 257, 262 (1979)).  Federal patent law preempts a state law claim that "offer[s] patent-like protection to intellectual property inconsistent with the federal scheme." *Dow Chem. Co. v. Exxon Corp.,* 139 F.3d 1470, 1475 (Fed. Cir. 1998).  The preemption inquiry focuses on the specific conduct underlying the state law claim. *See Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318 (Fed. Cir. 1998), *overruled in part on other grounds by Midwest Ind. Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1360-61 (Fed. Cir. 1999) (*en banc* in part).  In *Hunter Douglas*, the Federal Circuit instructed:

> To determine whether these state law torts are in conflict with federal patent law and accordingly preempted, we assess a defendant's allegedly tortious conduct.  If a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law.  Conversely, if the conduct is not so protected or governed, then the remedy is not preempted.  This approach, which considers whether a state law tort, 'as-applied,' conflicts with federal patent law, is consistent with that employed by the Supreme Court in cases involving preemption of state unfair competition law.

153 F.3d at 1336.  "To survive preemption, [plaintiffs] must plead conduct in violation of [state law] that is separate and independent from its patent law claim." *Veto Pro Pac, LLC v. Custom Leathercraft Mfg. Co.*, No. 3:08-cv-302 (VLB), 2009 WL 276369, at *2 (D. Conn. Feb. 5, 2009).  That is, patent law will not preempt state law claims if such claims "include additional elements not found in the federal patent law cause of action and if they are not an impermissible attempt to offer patent-like protection to a subject matter addressed by federal law." *Rodime PLC v. Seagate Tech., Inc.,* 174 F.3d 1294, 1306 (Fed. Cir. 1999).

7

### (a)   Unfair Competition

Under New York law, an unfair competition claim encompasses a broad range of unfair practices.  *See American Footwear Corp. v. Gen'l Footwear Co.,* 609 F.2d 655, 662 (2d Cir. 1979).  Although the law of unfair competition is "a broad and flexible doctrine" that has been described as "a form of commercial immorality," its reach is not without limits.  *Roy Export Co. Establishment v. Columbia Broad Sys.,* 672 F.2d 1095, 1105 (2d Cir. 1982).  "[T]he essence of an unfair competition claim is that the defendant has misappropriated the labors and expenditures of another and has done so in bad faith."  *Coca-Cola North America v. Crawley Juice, Inc.*, Nos. 09 CV 3259 (JG)(RML), 09 CV 3260 (KAM)(RML), 09 CV 3279 (ERK)(RML), 2011 WL 1882845, at *6 (E.D.N.Y. May 17, 2011) (internal quotation marks and citations omitted); *see Luv n' Care, Ltd. v. Mayborn USA, Inc.*, 2012 WL 3095065, at *4 (S.D.N.Y. July 30, 2012) ("a plaintiff asserting an unfair competition claim under New York common law must also show that defendant acted in bad faith"); *see also Bongo Apparel, Inc. v. Iconix Brand Group, Inc.,* 856 N.Y.S.2d 22, 2008 WL 41341 (N.Y. Sup. Ct. 2008) ("While there is no complete list of activities which constitute unfair competition under New York law, the essence of an unfair competition claim is that one may not act in bad faith to misappropriate the skill, expenditures, and labor of another").  However, "[n]ot every act, even if taken in bad faith, constitutes unfair competition." *Computer Associates, Inc. v. Simple.com, Inc.*, 621 F. Supp. 2d 45, 53 (E.D.N.Y. 2009) (holding that a plaintiff must show more than commercial unfairness).  "The tort is not all- encompassing . . . ; the New York Court of Appeals in rejecting the notion that unfair competition is equivalent to the amorphous term commercial unfairness has stated that misappropriation of another's commercial advantage is a cornerstone of the tort." *Id.*  (internal quotation marks and citations

8

omitted).  In this case, plaintiffs' unfair competition claims fail due to the absence of additional

tortious conduct that is separate from the patent law cause of action.  The tortious conduct

proffered is based upon allegations (i) of patent infringement, (ii) that defendants copied an

unpatented product; and (iii) of trade dress infringement.

### (i)      Infringement of Plaintiff's Design Patents

Plaintiffs' allegations that defendants engaged in unfair competition by copying and

reproducing Carson's products that were covered by the '726 Patent and the '779 patent,

including the RimFree™ and the Attach-a-Mag™ products, by systematically infringing

Carson's and other's intellectual property rights in order to unfairly compete with Carson,

without more, are preempted by federal patent law because they are predicated upon plaintiffs'

claims that Prym's magnifiers infringed Carson's design patents.  *See Hunter Douglas*, 153 F.3d

at 1335 ("If a plaintiff bases its tort action on conduct that is protected or governed by federal

patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for

conflict with federal patent law"); *see also Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 231

(1964) (holding that state law claim for unfair competition cannot be applied to "give protection

of a kind that clashes with the objectives of the federal patent laws").  "[T]o survive preemption,

[plaintiffs] must plead conduct in violation of [state law] that is separate and independent from

its patent law claim."  *Veto Pro Pac, LLC v. Custom Leathercraft Mfg. Co.*, No. 3:08-cv-302

(VLB), 2009 WL 276369, at *2 (D. Conn. Feb. 5, 2009).  Plaintiffs have failed to do so.

Although plaintiffs argue that they have alleged "many additional facts" of wrongful

conduct beyond facts constituting patent infringement for their state law claims, including

"Carson sells commercial embodiments of its patents," (Second Am. Compl. ¶¶ 11, 15, 19; Am.

9

Compl. ¶¶ 11, 15, 19), and that "before Prym's conduct, it had a business relationship" with Jo-
Ann Stores (Second Am. Compl. ¶ 101; Am. Compl. ¶ 77), neither these nor the following
factual allegations describe tortious conduct sufficient to establish the bad faith element for a
cognizable claim.  The bare assertions that Prym intended to interfere with Carson's prospective
business relationship with Jo-Ann by dishonest, unfair, and improper means, (Second Am.
Compl. ¶ 102), and Prym engaged in a plan to displace Carson as a supplier to Jo-Ann by unfair
means," (*id.* ¶ 103) are conclusory, fail to identify specifically the alleged wrongful conduct
undertaken by defendants, and are insufficient to establish to establish a claim of unfair
competition under New York law.  *See Twombly,* 550 U.S. at 570 (holding that a "plaintiff's
obligation to provide the grounds of his entitlement to relief requires more than labels and
conclusions, and a formulaic recitation of the elements of a cause of action will not do") (internal
quotation marks and citations omitted); *cf. Champion Labs., Inc. v. Parker-Hannifin Corp.,* No.
1:10-CV-02371-OWW-DLB, 2011 WL 1883832, at *14 (E.D. Cal. May 17, 2011) (dismissing
unfair competition claim where allegations were "conclusory, incomplete" and failed to plead
facts to "appropriately identify with particularity the conduct undertaken by [defendant] that
violates unfair competition laws").   Further, the allegation that Prym "engaged in an overarching
plan in which patent infringement was simply a means to the end of unfairly competing with
Carson," (Pls. Mem. in Opp. to Defendant Prym, at 11), "necessarily depends on resolution of a
substantial question of federal patent law," *Hunter Douglas,* 153 F.3d at 1328, and fails to plead
conduct or bad faith that is independent from its patent infringement claim, *cf. Mayo Clinic
Jacksonville v. Alzheimer's Institute of America, Inc.,* Nos. 8:05-cv-639-T-23TBM, 8:05-cv-
1049-T-23TBM, 2009 WL 1850190, at *4  (M.D. Fla. June 26, 2009).   Notably, plaintiffs'

factual allegations that Jo-Ann stores unfairly competed by "refusing to continue its longtime supplier relationship with Carson" and "pretending to fairly evaluate Carson as a supplier with no intention of continuing its business relationship," (Am. Compl. ¶ 73), fails because there is no claim in the Amended Complaint that Jo-Ann Stores breached a contractual obligation to do business with Carson. As a retailer, Jo-Ann Stores does not unfairly compete by declining to do business with Carson, a wholesaler, nor are there any allegations in the complaint that would otherwise sustain such a claim.

### (ii)    Infringement of an Unpatented Product

Plaintiffs' allegation that defendants engaged in unfair competition by copying and reproducing the Clip & Flip™ magnifier is insufficient to sustain a common law claim. The complaint does not allege that this product was protected by a patent. (Second Am. Compl. ¶ 35, Am. Compl. ¶ 35.) As such, the product is in the public domain. As set forth above, federal patent laws limit the states' ability to regulate unfair competition. State law is preempted when it enters "a field of regulation which the patent laws have reserved to Congress." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 167 (1989) (internal quotation marks and citation omitted). Thus, where state law offers "patent-like protection for ideas deemed unprotected under the present federal scheme, [state law] conflicts with the strong federal policy favoring free competition of ideas." *Id.* Consistent with the preemptive effect of federal patent law, the copying of a product that is not patented that exists in the public domain is not actionable. In *Sears, Roebuck & Co.,* 376 U.S. 234 (1964) and *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234 (1964), the Supreme Court explained that

when an article is unprotected by a patent or a copyright, state law may not forbid

11

> others to copy that article.  To forbid copying would interfere with the federal
> policy . . . of allowing free access to copy whatever the federal patent and
> copyright laws leave in the public domain.

*Compco Corp.*, 376 U.S. at 237.   Indeed, [a] state may not, through its law banning unfair

competition undermine federal patent rights by prohibiting the copying of an article that is

protected by neither a federal patent nor a federal copyright."  *20th Century Wear, Inc. v.*

*Sanmark-Stardust, Inc.,* 747 F.2d 81, 92 n.15 (2d Cir. 1984); *cf. Gemveto Jewelry Co. v. Jeff*

*Cooper Inc.,* 800 F.2d 256, 259 (Fed. Cir. 1986) (vacating injunction predicated upon a state

unfair competition claim where the method of implementing the injunction was broader than

permissible "in view of the *Sears* and *Compco* decisions which hold that copying of the article

itself that is unprotected by the federal patent and copyright laws cannot be protected by state

law").  Accordingly, plaintiffs' claim of unfair competition based on  the allegation that

defendants copied an unpatented product of plaintiffs is preempted and cannot serve as a basis

for a cognizable claim under state law.[4]

### (iii)    Trade Dress Infringement

Plaintiffs assert that the designs of the Clip & Flip™ and the SureGrip™ magnifiers,

nevertheless support their common law causes of action based on allegations that defendants

infringed upon the protected trade dress affiliated with these products.  Plaintiffs' assertions are

unavailing.

A species of a common law claim for unfair competition is trade dress infringement.  *See*

---

[4]Likewise, to the extent that plaintiffs rely on an allegation that defendants copied and
reproduced the product of plaintiffs identified as the SureGrip™ magnifier to support its
common law unfair competition claim, their reliance is misplaced.  As with the Clip & Flip™
magnifier, there is no allegation in the complaint that it is protected by a patent, and therefore it
is preempted by federal patent law.

*Medism Ltd. v. BestMed LLC*, No. 10 Civ. 2463 (SAS), 2012 WL 5954757, at *5 (S.D.N.Y. Nov. 28, 2012).  A product's trade dress is its "total image and overall appearance . . . as defined by its overall composition and design, including size, shape, color, texture and graphics." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27, 31 (2d Cir. 1995) (citations omitted). "In order to prevail in an action for trade dress infringement in New York, a plaintiff must prove (1) that its trade dress is distinctive or has acquired secondary meaning; and (2) that a likelihood of confusion exists between its product and the defendant's product." *Eyal R.D. Corp. v. Jewelex New York Ltd.,* 784 F. Supp. 2d 441, 448 (S.D.N.Y. 2011) (citations omitted).  In addition, "a plaintiff must establish that the trade dress is not functional."  *Id.*  "The elements of unfair competition under New York law closely parallel the elements of unfair competition under the Lanham Act."  *Medism Ltd.,* 2012 WL 5954757, at *5; *see Lyons Partnership, L.P. v. D & L Amusement & Enter., Inc.,* 702 F. Supp. 2d 104, 115 (E.D.N.Y. 2010).  "Both are directed at conduct by which a defendant has misappropriated the labors and expenditures of another." *Lyons Partnership, L.P.,* 702 F. Supp. 2d at 115 (internal quotation marks and citations omitted). However, under New York law, "a plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief as well as make a showing of bad faith." *Id.* (internal quotation marks and citation omitted).  In sum, a common law unfair competition claim under New York law "is identical to a Lanham Act claim, save for the additional requirement that plaintiff show defendant's bad faith." *Heptagon Creations, Ltd. v. Core Group Marketing LLC,* No. 11 Civ. 1794 (LTS) (AJP), 2011 WL 6600267, at *9 (S.D.N.Y. Dec. 22, 2011).

With respect to the Clip & Flip™ magnifier, the Second Amended Complaint and

13

Amended Complaint do not contain any allegations of a claim for trade dress infringement in the design of this product.  Although plaintiff's opposition papers cite to paragraphs 20 of the Second Amended Complaint and Amended Complaint in support of plaintiff's claim of protected trade dress for the design of the Clip & Flip™ product, and paragraph 78 of the Second Amended Complaint and paragraph 60 of the Amended Complaint in support of plaintiffs' allegation of consumer confusion, these paragraphs do not reference the Clip and Flip™ product[5], but rather relate exclusively to the SureGrip™ product.

With respect to the plaintiffs' unfair competition claim that defendants infringed upon the purported trade dress of the SureGrip™ product, plaintiffs' conclusory allegation that defendants sold "knock-off products," without proffering any facts to make that conclusion plausible, is insufficient to establish the bad faith requirement for a cognizable claim.  In any event, as discussed *infra*, since plaintiffs have not adequately alleged a trade dress infringement claim under the Lanham Act, their claim for common law unfair competition necessarily fails.  *See*

---

[5]To the extent that plaintiffs assert that defendants sold and copied portions of "Carson's written marketing materials associated with the Clip & Flip™ magnifier" to support their common law claims and to establish the "likelihood of confusion" element of their trade dress infringement claim, (Second Am. Compl. ¶¶ 36, 97, 103, Am. Compl. ¶¶ 36, 73, 79), for the reasons stated above, the complaints assert trade dress infringement only as to the SureGrip™ product.  Moreover, to the extent that plaintiffs may be seeking a claim of copyright infringement in the marketing materials, *see Eyal R.D. Corp.,* 784 F. Supp. 2d at 445 ([t]he Copyright Act preempts a state law claim that protects 'legal or equitable rights that are the equivalent to any of the exclusive rights within the general scope of copyright as specified'") (quoting 17 U.S.C. § 301)), plaintiffs have failed to allege any harms in their complaints that are separate from the alleged copying of the materials, *see Computer Assocs. Int'l, Inc, v. Altai, Inc.,* 982 F.2d 693, 716 (2d Cir. 1992) ("[i]f an 'extra element' is required of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie 'within the general scope of copyright,' and there is no preemption.  The extra element must change the nature of the action so that it is qualitatively different from a copyright infringement claim").  Accordingly, such a claim would fall within the ambit of the Copyright Act and be preempted.

14

*Heptagon Creations, Ltd.* 2011 WL 6600267, at *9.

      **(b)**      **Tortious Interference with Prospective Business Relations**

      In order to prevail on a claim for tortious interference with prospective business relations under New York law, a plaintiff must prove that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003); *see S & L Vitamins Inc. v. Australian Gold, Inc.*, 521 F. Supp. 2d 188, 217 (E.D.N.Y. 2007) (acknowledging that a key element of this claim is that plaintiff must allege that a "defendant's conduct was motivated solely by malice or to inflict injury by unlawful means, beyond mere self-interest or other economic considerations") (internal quotation marks and citation omitted).  As previously discussed, patent law will not preempt state law claims if such claims "include additional elements not found in the federal patent law cause of action and if they are not an impermissible attempt to offer patent-like protection to subject matter addressed by federal law." *Rodime PLC*, 174 F.3d at 1306.  Tortious interference with prospective business relations "requires proof that the defendant intentionally engaged in acts wrongful by some measure other than the fact of the interference itself which are designed to disrupt an economic relationship between the plaintiff and another." *Id.* (citations omitted).  "Wrongful means includes physical violence, fraud, misrepresentation, civil suits, criminal prosecutions, and some degree of economic pressure, but more than simple persuasion is required." *Meadow Ridge Capital, LLC v. Levi*, 920 N.Y.S.2d 242 (N.Y. Sup. Ct. 2010).  Here, plaintiffs' claim of tortiouis interference with business relations is based on the same factual allegations as their common law

unfair competition claim and likewise fails.

As an initial matter, plaintiffs have not set forth any allegations that defendants' conduct was motivated solely by malice or to inflict injury beyond the prospect of economic gain.  *See Shared Communications Servs. of ESR, Inc. v. Goldman Sachs & Co.,* 803 N.Y.S.2d 512, 513 (1st Dept. 2005) (holding plaintiff failed to state a claim for tortious interference with prospective business relations where it "failed to include the necessary allegation that defendant's conduct was motivated solely by malic or to inflict injury by unlawful means, beyond mere self-interest or other economic considerations") (citation omitted); *Cerberus Capital Mgmt., L.P. v. Snelling & Snelling, Inc.,* No. 60045/2005, 2005 WL 4441899, at *7 (N.Y. Sup. Ct. Dec. 19, 2005) (holding "the complaint contains nothing indicating the . . . defendants acted beyond mere self-interest or other economic considerations. This is insufficient to support a claim for tortious interference with prospective business relations").  Moreover, plaintiffs have not pleaded conduct in violation of state law that is separate from their federal patent law claim.  The claim for tortious interference with prospective business relations is based on the identical set of transactional facts as the unfair competition claim, and for the same reasons discussed above, is preempted by federal patent law.  Finally, plaintiffs concede that the claim for tortious interference with prospective business relations against defendant Jo-Ann Stores fails as matter of law, because under New York law defendant Jo-Ann Stores cannot be held liable for interfering with its own contract or prospective business relations.[6]

**(2)    Judicial Estoppel**

_____

[6]Plaintiffs state that they will file a motion to amend the complaint against defendant Jo-Ann Stores to remove this Count.  (Pls.' Mem. in Opp. to Def. Jo-Ann Stores, at 18.)  No such motion need be filed as this cause of action is dismissed for the reasons set forth above.

16

Plaintiffs argue that the Court should nonetheless deny defendants' motions for partial judgment because defendants' preemption arguments are barred by the doctrine of judicial estoppel.  The Court finds no basis to do so.

"The doctrine of judicial estoppel exists to serve two objectives: preserving the sanctity of the oath by requiring consistency in sworn positions and protecting judicial integrity by avoiding inconsistent results in two proceedings."  *Garcon v. Starwood Hotel and Resorts Worldwide, Inc.,* No. 10 Civ. 5720 (PAC)(RLE), 2012 WL 7149433, at *10 (S.D.N.Y. Sept. 27, 2012) (citations omitted); *see New Hampshire v. Maine,* 532 U.S. 742, 749 (2001) (the purpose of the doctrine "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment").  "Courts that choose to apply the doctrine of judicial estoppel do so only with caution."  *Garcon,* 2012 WL 7149433, at *10 (citations omitted).  This equitable doctrine "provides that where a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."  *New Hampshire,* 532 U.S. at 749 (internal quotation marks, brackets and citation omitted); *see Uzdavines v. Weeks Marine, Inc.,* 418 F.3d 138, 147 (2d Cir. 2005) (same).

The Supreme Court has identified the existence of three factors that "typically inform the decision whether to apply the doctrine in a particular case:"

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. . . .   A third consideration is whether the

17

> party seeking to assert an inconsistent position would derive an unfair advantage
> or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire,* 532 U.S. at 750-51 (internal quotation marks and citation omitted); *accord DeRosa v. Nat'l Envelope Corp.,* 595 F.3d 99, 103 (2d Cir. 2010). These factors, however, do not constitute "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *New Hampshire,* 532 U.S. at 750-51. The Second Circuit has "further limit[ed] judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *DeRosa,* 595 F.3d at 103; *see also Republic of Ecuador v. Chevron Corp.,* 638 F.3d 384, 397 (2d Cir. 2011). In considering whether to apply this doctrine, the Court views the inconsistent statements in the context in which they are made, *DeRosa,* 595 F.3d at 103; *see Beautybank Inc. v. Harvy Prince LLP,* 811 F. Supp. 2d 949, 958 (S.D.N.Y. 2011), and "[i]f the statements can be reconciled there is no occasion to apply an estoppel," *Simon v. Safelite Glass Corp.,* 128 F.3d 68, 72-73 (2d Cir. 1997). Here, defendants' actions do not trigger judicial estoppel because defendants did not take any "clearly inconsistent" positions in the district court.

Preliminarily, plaintiffs fail to aver that defendants advanced an inconsistent factual position in a prior proceeding, arguing:

> Prym's positions are clearly inconsistent. Prym has asserted a state law claim based on false patent markings, which is conduct governed by the Patent Act. However, Prym secured leave to amend by persuading the Court that its state law claims were not futile by, for example, being preempted. At the same time, Prym continues to claim that Carson's state law claims which Prym believes also deal with conduct governed by the Patent Act, are preempted. Indeed, Prym's positions are so inconsistent that case law finding state law claims based on false markings to not be preempted rely on the *same* Federal Circuit precedent at issue in Prym's motion against Carson's claims.

(*Cordani Jr. Letter*, dated October 26, 2012, at 3 (emphasis in original).) Judicial estoppel

18

applies to factual positions that are clearly inconsistent, not inconsistent legal positions.  *See Welfare Fund, New England Health Care Employees v. Bidwell Care Center, LLC*, 419 Fed. Appx. 55, 60 (2d Cir. 2011) ("[e]ven assuming that plaintiffs' prior positions . . . were factual (as opposed to legal) . . . judicial estoppel does not apply because there is no clear inconsistency between the positions"); *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004) ("judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding"); *see also Bank of America, N.A. v. 3301 Atlantic, LLC*, No. 10-CV-5204 (FB), 2012 WL 2529196, at *6 (E.D.N.Y. June 29, 2012) (same).

In any event, there is no inconsistency in the two legal positions given the context of each proceeding.  As discussed *supra*, in the motion for partial judgment on the pleadings, defendant Prym argued that plaintiffs' state law claims were preempted because plaintiffs failed to plead conduct in violation of state law that is separate and independent from their patent law claim.  In the motion to amend its answer to assert state law false advertising counterclaims under New York General Business Law § 350-a, Prym's state law claim included additional elements not found in Prym's false patent marking claim, namely, the allegations of fact that Carson acted in bad faith in falsely marking its products.[7]  Thus, unlike the former proceeding where defendant

---

[7]In its Counterclaims, Prym set forth allegations that Carson was told twice by the Patent Office, that if Carson wished to claim a design involving a transparent, translucent or highly polished or reflective surface, Carson must use diagonal lines in the patent drawings to depict such surface.  Notwithstanding, Carson ignored the directives and the directives of the Manual for Patent Examining Procedure and marked the Attach-a-Mag and RimFree products with patent numbers that did not protect such products.  (Prym's Counterclaims to the Second Amended Complaint, dated October 5, 2012, ¶¶ 49-72) ("Carson has falsely marked and is falsely marking these products willfully and in bad-faith as Carson, since at least as early as September 2008, knew that the '779, '063, and '726 Patents do not protect the Attach-A-Mag of RimFree

Prym alleged additional tortious conduct independent of its patent counterclaim, in the instant proceeding, plaintiffs have failed to sufficiently allege bad faith tortious conduct that was separate from the patent claims in their complaints.  More importantly, when considering whether federal patent law preempts a state law claim that offers patent like protection to intellectual property inconsistent with the federal scheme, courts examine a defendant's or counter-defendant's allegedly tortious conduct with respect to the particular state law claim asserted.  Here, the earlier position of Prym involved different state law claims than Prym's latter position in the instant motion, and therefore any alleged preemption inconsistency can be reconciled by the underlying facts of the particular claims.

Accordingly, defendants' motions to dismiss the common law claims of plaintiffs for unfair competition and tortious interference with prospective business relations are granted.

**(C)     Plaintiffs' Claim for Trade Dress Infringement**

Section 43(a) of the Lanham Act provides:

> [a]ny person who, on or in connection with any goods or services, or any
> container for goods, uses in commerce any word, term, name, symbol, or device,
> or any combination thereof, or any false designation of origin, false or misleading
> description of fact, or false or misleading representation of fact, which [] is likely
> to cause confusion, or to cause mistake, or to deceive as to the affiliation,
> connection, or association of such person with another person, or as to the origin,
> sponsorship, or approval of his or her goods, services, or commercial activities by
> another person [] shall be liable in a civil action by any person who believes he or
> she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A).  This protection extends to a product's trade dress which "encompasses the overall design and appearance that make the product identifiable to consumers."  *Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 269 F.3d 114, 118 (2d Cir.

products").

20

2001).  "To plead a claim of trade dress infringement involving the appearance of a product, [a plaintiff] must allege that (1) the claimed trade dress is non-functional; (2) the claimed trade dress has secondary meaning; and (3) there is a likelihood of confusion between the plaintiff's good and the defendant's."  *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 Fed. Appx. 389, 391 (2d Cir. 2003) (citation omitted).  "A plaintiff must also offer a precise expression of the character and scope of the claimed trade dress,"*id.* (internal quotation marks and citation omitted), and articulate the "elements of their product design with specificity to be afforded trade dress protection," *Shevy Custom Wigs, Inc. v. Aggie Wigs.,* No. 06 Civ. 1657 (JG), 2006 WL 3335008, at *4 (E.D.N.Y. Nov. 17, 2006).

"[C]ourts have been reluctant to extend trade dress protection to a product's design (as opposed to its packaging) and to an entire line of products (as opposed to a single product)." *ID7D Co. v. Sears Holding Corp.*, No. 3:11cv1054(VLB), 2012 WL 1247329, at *6 (D. Conn. Apr. 13, 2012) (internal quotation marks and citations omitted).  The Second Circuit has cautioned that in analyzing trade dress claims, "courts must not lose sight of the underlying purpose of the Lanham Act, which is protecting consumers and manufacturers from deceptive representations of affiliation and origin."  *Landscape Forms, Inc. v. Columbia Cascade Co.,* 113 F.3d 373, 375 (2d Cir. 1997).  In doing so, the Court has explained that the trade dress "analysis requires courts to balance the policy of protecting consumers from confusion against that in favor of free competition" and that the "policy of protecting competition is at least as strongly implicated when . . . product designs or configurations are claimed as trade dress." *Id*. at 377, 380; *see ID7D Co.,* 2012 WL 1247329, at *6 (same).

**(1)     Functionality**

With respect to the first element, plaintiffs bear the burden of proving the alleged trade dress is non-functional, 15 U.S.C. § 1125(a)(3), and there is a "statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection," *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001).  "[T]rade dress is functional, and thus not protectable, when it is essential to the use or purpose of the article."  *Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 Fed. Appx. 615, 620 (2d Cir. 2008) (citation omitted).  Moreover, a trade dress claim based on "[a] product design is functional when certain features of the design are essential to effective competition in a particular market."  *Id.* (internal quotation marks and citation omitted); *see also ID7D Co.,* 2012 WL 1247329, at *6 ("in cases involving an aesthetic feature, the dress is also functional if the right to use it exclusively would put competitors at a significant non-reputation-related disadvantage.  Thus, the non-functionality requirement protects competition even at the cost of potential consumer confusion").  That is, "the absence of alternative constructions performing the same function . . . renders the feature functional."  *Brandir Int'l, Inc. v. Cascade Pacific Lumber Co.,* 834 F.2d 1142, 1148 (2d Cir. 1987).  The Second Circuit has stressed that the "test of non-functionality in trade dress claims that are based on product design is even more critical than in trade dress claims based on packaging, because a monopoly right in the design of the product itself is more likely to preclude competition," and "[a]s with the overbreadth element, rigorous application of the requirement of non-functionality is necessary to avoid undermining the carefully circumscribed statutory regimes for the protection of useful and ornamental designs under federal patent and copyright law."  *Yurman Design, Inc v. PAJ, Inc.*, 262 F.3d 101, 16 (2d Cir. 2001) (internal quotation marks and citations omitted).

Here, plaintiffs have failed to plead in the complaints that any of the specific elements they are claiming trade dress for are non-functional.  Instead, plaintiffs state in a conclusory fashion that "[t]he ornamental design and overall appearance of Carson's SureGrip™ magnifier are not functional."  (Second Am. Compl. ¶¶ 20, 77; Am. Compl. ¶¶ 20, 59.)  Because such an allegation is nothing more than a conclusion or a "formulaic recitation of the elements of the cause of action" devoid of factual content from which such a legal conclusion could be drawn, it does not pass muster under *Iqbal*.  556 U.S. at 677; *see ID7D Co.*, 2012 WL 1247329, at *7 (holding plaintiff's "conclusory allegation that its trade dress is non-functional cannot rebut the statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection").  Notwithstanding the specificity requirement, plaintiffs assert in their opposition papers that "[t]here is no other way to allege that something's ornamental design and overall appearance is non-functional other than to simply state it," and direct the Court to a photograph of the SureGrip™ magnifier annexed to each of the defendants' complaints "that illustrates the non-functional nature of its ornamental design and overall appearance."  (Pls. Mem. in Opp. to Def. Prym's Motion, at 17; Pls. Mem. in Opp. to Def. Jo-Ann Store's Motion, at 16-17.)  Plaintiffs then assert by way of "example only" that the non-functional aspects that can be gleaned from the photograph.  (*Id.*)  This is insufficient to satisfy the requirement of non-functionality.  *See National Lighting Co. v. Bridge Metal Indus., LLC,* 601 F. Supp. 2d 556, 562-63 (S.D.N.Y. 2009) (holding that a trade dress claim cannot be "rescued by the mere attachment of . . . photographs" to the complaint as "courts cannot be expected to distill from a set of images those elements that are . . . non-functional").  In short, "[t]he failure to plead non-functionality with factual particularity establishes merely the possibility and not the plausibility of and is

23

therefore fatal to [p]laintiff[s]' trade dress claim." *ID7D Co.,* 2012 WL 1247329, at *7.

### (2)  Secondary Meaning

"To merit legal protection, a product's trade dress must be both sufficiently distinctive to distinguish its mark from those of others and nonfunctional." *Blumenthal Distributing, Inc. v. Executive Chair, Inc.,* No. CV-10-1280, 2010 WL 5980151, at *7 (E.D.N.Y. Nov. 9, 2010). "To establish that its trade dress is distinctive . . . a plaintiff must make the additional showing that its design has acquired secondary meaning in the marketplace by which it is identified with its producer or source." *Id.* (internal quotation marks and citation omitted). "The secondary meaning analysis considers whether the purchasing public associates [the] dress with a single producer of source rather than just with the product itself." *Id.* (internal quotation marks and citation omitted). In assessing whether trade dress has acquired secondary meaning, courts consider factors such as: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) the length and exclusivity of the mark's use." *Cartier, Inc.*, 294 Fed. Appx. at 618 (internal quotation marks and citations omitted). "[N]o single factor is determinative, and every element need not be proved." *L. & J.G. Stickley, Inc. v. Canal Dover Furniture Co.,* 79 F.3d 258, 263 (2d Cir. 1996) (internal quotation marks and alterations and citation omitted).

Here, plaintiffs have failed to plead facts that would support a plausible inference that their trade dress has acquired secondary meaning. Absent from their pleadings are any facts relating to advertising expenditures, consumer surveys, sales success, marketing expenditures, or unsolicited media coverage. Plaintiffs state in a conclusory fashion that "[t]he ornamental design

24

and overall appearance of Carson's SureGrip™ magnifier is inherently distinctive and/or has acquired secondary meaning in the relevant marketplace and is not functional."  (Second Am. Compl. ¶ 20; Am. Compl. ¶ 20.)  Although plaintiffs aver that secondary meaning can be inferred from (i) a tortious scheme by defendants to plagiarize Carson's trade dress in order to remove Carson as a supplier to Jo-Ann stores; (ii) the sales, marketing and promotion of the SureGrip™ design since 1998; and (iii) the fact that the SureGrip™ product has become a marketing success, these general and cursory allegations, with no factual enhancement, fail to support an inference that SureGrip™ has acquired secondary meaning.  *See, e.g., Eyal R. D. Corp.,* 784 F. Supp. 2d at 445, 448 (holding plaintiff failed to plead secondary meaning in its trade dress despite alleging its "exclusive and widespread use" of the trade dress; it "has acquired enormous value and recognition in the United States"; its "trade dress is well known to the consuming public" and within the trade "as the exclusive and unique source" identifier).

### (3)    Likelihood of Confusion

"The likelihood-of-confusion inquiry turns on whether numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance into the marketplace" of the mark or dress of defendant.  *Playtex Prods., Inc. v. Georgia-Pacific Corp.,* 390 F.3d 158, 161 (2d Cir. 2004), *superseded on other grounds by statute as recognized in Starbucks Corp. v. Wolfe's Borough Coffee, Inc.,* 588 F.3d 97, 108 (2d Cir. 2009); *see Conte v. Newsday, Inc.,* No. 06-CV-4859 (JFB)(ETB), 2013 WL 978711, at *20 (E.D.N.Y. Mar 13, 2013) (same).  There must be a "probability of confusion, not a mere possibility." *Id.* (citation omitted).   Courts apply the factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), in order to assess the likelihood of

confusion: "(1) the strength of the plaintiff's mark or dress; (2) the similarity between the two marks or dresses; (3) the proximity of the products in the marketplace; (4) the likelihood that the prior owner will bridge the gap between the products; (5) evidence of actual confusion; (6) the defendant's bad faith; (7) the quality of defendant's product; and (8) the sophistication of the relevant consumer group." *Blumenthal Distributing, Inc.*, 2010 WL 5980151, at *10 (citations omitted); *see Playtex Prods., Inc.,* 390 F.3d at 162.  "The *Polaroid* factors are not an exhaustive list of relevant considerations, and must not be applied mechanically.  Rather, a court should focus on the ultimate question of whether consumers are likely to be confused." *Id*. (internal quotation marks and citation omitted).

Plaintiffs have failed to plead facts regarding likelihood of confusion that would state a claim to relief that is plausible on its face. *See Iqbal*, 556 U.S. at 677.  Plaintiffs' conclusory allegations that (1) defendant "Prym's copying of the ornamental design and overall appearance of Carson's SureGrip™ magnifier was intended to cause, and is likely to cause confusion . . . as to the affiliation, connection or association of the products with Carson, or as to the origin, sponsorship or approval of the products by Carson," (Second Am. Compl, ¶ 78), and (2) defendant Jo-Ann Stores' "marketing, offering for sale and sale of a product that copied the ornamental design and overall appearance  of Carson's SureGrip™ magnifier was intended to cause, and is likely to cause confusion . . . as to the affiliation, connection or association of the products with Carson, or as to the origin, sponsorship or approval of the products by Carson," (Am. Compl, ¶ 60), are at best "naked assertion[s] devoid of factual enhancement," *Iqbal*, 556 U.S. at 677, and as such do not allow the Court to draw the reasonable inference that there is a likelihood of confusion.

26

### (4)      Precise Expression of the Character and Scope of Product Design

As this element suggests, plaintiffs must articulate "the specific elements which comprise its distinct dress." *Landscape Forms*, 113 F.3d at 381; *see Shevy Custom Wigs, Inc.,* 2006 WL 3335008, at *4 (plaintiffs must plead the "elements of their product design with specificity to be afforded trade dress protection). In addition, the plaintiff must specify "not just *which* features are distinctive, but also *how* they are distinctive." *Shevy Custom Wigs, Inc.,* 2006 WL 3335008, at *5 (emphasis in original). "Laudatory" descriptions without specificity "fail to indicate what unique combination of features makes the trade dress . . . likely to be perceived by consumers as bearing the stamp of their maker." *Landscape Forms*, 113 F.3d at 381-82; *see Shevy Custom Wigs, Inc.,* 2006 WL 3335008, at *5 (holding "sweeping descriptions . . . in fact denote categories of features, not the features themselves"); *National Lighting*, 601 F. Supp. 2d at 562 (finding a "laundry list of the elements that constitute a . . . design" insufficient to demonstrate distinctiveness).

In this context, plaintiffs' pleadings are plainly insufficient. *See Iqbal*, 556 U.S. at 677. In the complaints, plaintiffs offer a conclusory allegation that "[t]he ornamental design and overall appearance of Carson's SureGrip™ magnifier is inherently distinctive" and attach an "exemplar" image as exhibits. (Second Am. Compl. ¶ 20, Ex. F; Am. Compl. ¶ 20, Ex. F.) Exhibit F of the complaints consist of a black and white image of the SureGrip™ magnifier with what appears to be the packaging of the product. (*Id.*) In the upper-left hand corner of the packaging image are the letters SG-10 and in the lower part of the image are the words: (i) Magnifier; (ii) 2.5x Power; (iii) Crystal-Clear All Glass Lens; (iv) 10x High Power Spot Lens; (v) SureGrip; (vi) Ergonomically designed soft grip handle; (vii) Ideal for needlework and arts

and crafts; (viii) Perfect for reading small print; (ix) Soft padded zipper pouch included; (x) Designed and intended for ages 13 years and older; (xi) Carson. (*Id.*)  To the extent plaintiffs seek to rely on the image of their product and the image of the packaging of their product to establish distinctiveness, their reliance is misplaced.  Aside from the fact that neither the picture nor the words contained on the packaging describe what unique combinations of features make the trade dress, "images alone do not satisfy the plaintiff's obligation to articulate the distinctive features of the trade dress."  *Heller Inc. v. Design Within Reach, Inc.*, No. 09 Civ. 1909 (JGK), 2009 WL 2486054, at *6 (S.D.N.Y Aug. 14, 2009); *see National Lighting*, 601 F. Supp. 2d at 563.  Plaintiffs do not offer any additional details or descriptions regarding which elements of the trade dress design for SureGrip™ are distinctive, must less how they are distinctive.  Thus, plaintiffs have failed to aver the required precise expression of the character and scope of the claimed trade dress for their magnifier.

Accordingly, given that plaintiffs have failed to allege facts with respect to all four essential elements of a trade dress claim which would permit the court to draw a reasonable inference that defendants infringed on plaintiffs' trade dress, defendants' motions to dismiss plaintiffs' claims for trade dress infringement are granted.

## CONCLUSION

Based on the foregoing, defendants' motions for partial judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) are granted.  Leave to replead within ten days of the date of this Memorandum and Order is granted.

Dated:  Central Islip, New York                    **SO ORDERED:**
                   March 25, 2013


                                        _____/s/_____
                                        ARLENE R. LINDSAY
                                        United States Magistrate Judge

28