UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

CARSON OPTICAL, INC. and LEADING
EXTREME OPTIMIST INDUSTRIES, LTD.,

                                Plaintiffs,

              -against-

PRYM CONSUMER USA, INC. and
JO-ANN STORES, INC.,

                                Defendants.

-------------------------------------------------------------X

**MEMORANDUM AND
ORDER**
CV 11-3677 (ARL)

**LINDSAY, Magistrate Judge:**

Plaintiff Carson Optical, Inc. ("Carson Optical" or "Carson"), a New York corporation that markets and sells optical products, and plaintiff Leading Extreme Optimist Industries, Ltd. ("Leading'), a Hong Kong company that manufactures optical products (collectively "plaintiffs"), commenced this action on July 29, 2011 against defendant Prym Consumer USA, Inc. ("Prym"), a manufacturer of magnification products, and commenced an action on January 6, 2012 against defendant Jo-Ann Stores, Inc., a retailer of Prym's products ("Jo-Ann Stores") (collectively "defendants"), alleging patent infringement under 35 U.S.C. § 271 *et seq*., trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a), and state law claims for unfair competition and tortious interference with prospective business relations in connection with four of plaintiff Carson Optical's design patents. All of the claims relate to magnifiers that were sold by Prym to Jo-Ann Stores, and then sold at retail by Jo-Ann Stores.

By order dated March 9, 2012, the district court consolidated the two actions. On November 27, 2012, the parties consented to the undersigned's jurisdiction pursuant to 28 U.S.C. § 636. Defendants each filed motions for partial judgment on the pleadings pursuant to Fed. R.

Civ. P. 12(c), and by Memorandum and Order dated March 25, 2013, the Court granted

defendants' motions and granted plaintiffs leave to replead. Plaintiffs filed their second amended

consolidated complaint on April 16, 2013. Before the Court are each defendants' partial motions

to dismiss the second amended consolidated complaint pursuant to Fed. R. Civ. P. 12(b)(6). For

the reasons set forth below, defendants' motions are granted.

## BACKGROUND

For purposes of this decision, the Court accepts as true the factual allegations set forth in

the second amended consolidated complaint against defendants and documents attached thereto.

Carson Optical markets and sells optical products throughout the country to retailers, including

until recently, Jo-Ann Stores. (Second Am. Consol. Compl. ¶¶ 2, 32.) At issue in this case are

three[1] of Carson Optical's design patents, to wit, U.S. Patent Nos. D495,726 S ("the '726

Patent"), D563,779 S ("the '779 Patent'), and D508,063 S ("the '063 Patent"), which were issued

by the United States Patent and Trademark Office. (*Id*. at. ¶¶ 10-21.) The commercial

embodiment of the '726 Patent is a product that bears the trademark RimFree. (*Id*. at. ¶ 13.) The

commercial embodiment of the '779 Patent is a product that bears the trademark Attach-A-Mag.

(*Id*. at. ¶ 17.) The commercial embodiment of the '063 Patent is a product that bears the

trademark Attach-a-Mag. (*Id*. at. ¶ 21.)

The designs of certain of Carson Optical's products, such as the SureGrip[2] and the Clip &

---

[1]Although plaintiffs reference a '437 Patent in the second amended consolidated
complaint, (*id*. at. ¶ 42), plaintiffs do not assert any facts with respect to this patent.

[2]In September 1998, Carson adopted an ornamental design and overall appearance for a
magnifier, which has been marketed and sold under the trademark SureGrip. (*Id*. at. ¶¶ 22-25.)
Since that time, Carson has marketed, promoted and sold magnifiers comprising the design,
which have become a marketing success. (*Id*.)

Flip[3], are not protected by design patents but have been marketed, promoted and sold under their trademarks. (*Id*. at. ¶¶ 22-31.) The SureGrip™ and the Clip & Flip™ products have been a commercial success. (*Id.*) Carson Optical has also developed written materials, including packaging materials which describe the features and benefits of its Clip & Flip™ magnifier, and owns the copyright in the written marketing materials. (*Id*. at. ¶¶ 30-31.)

According to Carson Optical, Prym secured a manufacturer to copy and reproduce Carson Optical's products, and Jo-Ann Stores conspired with Prym to accomplish this. (*Id*. at. ¶¶ 33-34.) Specifically, plaintiffs allege that defendants imported, offered for sale and sold (i) a magnifier that infringes the '726 Patent; (ii) a product that infringes the '779 Patent; (iii) a product that infringes the '063 Patent; (iv) a magnifier that is a copy of Carson Optical's SureGrip™ magnifier and infringes Carson's trade dress rights; and (v) a copy of Carson Optical's Clip & Flip™ magnifier. (*Id*. at. ¶¶ 35-39.) In addition, plaintiffs aver that Prym copied portions of Carson Optical's written marketing materials associated with the Clip & Flip™ magnifier. (*Id*. at. ¶ 40.) Because of Prym's alleged infringement, plaintiffs maintain that Prym displaced Carson Optical as a supplier to Jo-Ann Stores. (*Id*. at. ¶ 41.) Jo-Ann's alleged infringement eliminated Carson Optical as its supplier. (*Id*. at. ¶ 42.)

Plaintiffs commenced the instant action against defendants, alleging (i) infringement of the design patents; (ii) infringement of trade dress; and (iii) common law claims for unfair competition. In addition, plaintiffs allege against defendant Prym a common law claim for tortious interference with prospective business relations. Defendants now seek to dismiss

---

[3]In October 1998, Carson adopted a design for a magnifier that is currently sold under the trademark Clip & Flip, and since that time has marketed, promoted and sold the magnifier, which has become a commercial success. (*Id*. at. ¶¶ 26-29.)

plaintiffs' common law tort claims and trade dress infringement claim, specifically Counts Seven and Nine in the second amended consolidated complaint against Jo-Ann Stores[4] and Counts Seven, Eight and Ten in the second amended consolidated complaint against Prym.

## DISCUSSION

**(A)     Legal Standard for Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)**

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept "as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (internal quotation marks and citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "In order to survive a motion to dismiss under 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level'." *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC,* 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief").  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S.

---

[4]Defendant Jo-Ann Stores joins in and incorporates by reference defendant Prym's motion papers.

4

at 557). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. at 678. That is, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 570. Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

For the purposes of a Rule 12(b)(6) motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A district court may also consider "matters of which judicial notice may be taken or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks and citation omitted).

**(B)     Plaintiffs' Common Law Claims**

Plaintiffs assert a common law claim for unfair competition against defendant Prym (Count Eight) and defendant Jo-Ann Stores (Count Nine) and a common law claim for tortious interference with prospective business relations against defendant Prym (Count Ten). With respect to defendant Prym, plaintiffs assert that Prym has engaged in conduct constituting common law unfair competition by:

  a.  Copying and reproducing Carson's products, including the RimFree,™ the distinctive elements of the SureGrip™ magnifier and the Clip & Flip™ magnifier in order to cause confusion, and the Attach-A-Mag™ product;
  b.  Providing knock-offs of Carson's products to Jo-Ann Stores;
  c.  Securing of Jo-Ann Stores as a customer by importing, offering for sale, and

selling products that infringe Carson and Leading's intellectual property rights;

d. Copying portions of Carson's written marketing materials associated with the Clip & Flip™ magnifier;

e. Systematically infringing Carson's and other's intellectual property rights, including the '726 Patent, and thereby unfairly competing with Carson; and/or

f. Displacing Carson as a supplier to Jo-Ann Stores by illegally copying Carson's product(s).

(Second Am. Consol. Compl., ¶¶ 93, 116.)  With respect to defendant Jo-Ann Stores, plaintiffs

assert that Jo-Ann Stores has engaged in conduct constituting common law unfair competition

by:

a. Copying and reproducing Carson's products, including the RimFree,™ the distinctive elements of the SureGrip™ magnifier and the Clip & Flip™ magnifier in order to cause confusion, and the Attach-A-Mag™ product;

b. Securing and selling to the consuming public a line of knock-off products;

c. Eliminating Carson as a long-time supplier by systematically copying Carson's products and violating its intellectual property rights in the process;

d. Selling products with marketing materials that contained copied portions of Carson's written marketing materials;

e. Systematically infringing Carson's and other's intellectual property rights, including patent rights, trade dress rights and/or copyright rights, and thereby unfairly harming Carson;

f. Even after ceasing its campaign of infringing activity refusing to continue its long-time supplier relationship with Carson; and/or

g. Pretending to fairly evaluate Carson as a supplier with no intention of continuing its business relationship with Carson and misrepresenting to Carson that Carson would be fairly evaluated when Jo-Ann knew that Carson would not be fairly evaluated.

(*Id.* at ¶¶ 120, 128.)

Additionally, as to defendant Prym, plaintiffs allege that Prym engaged in dishonest,

unfair, and/or improper means to interfere with Carson's prospective relations with Jo-Ann

Stores by engaging in the course of conduct enumerated above and by exerting unfair economic

pressure on Carson by pricing its goods at a predatory level for the specific purpose of ousting

Carson as Jo-Ann Store's vendor.  Plaintiffs assert that Prym's predatory pricing was a result of

Prym's (a) misappropriating Carson's skills, efforts, and labor in designing and developing unique magnifier designs and marketing materials, (b) misappropriating Carson's goodwill by knocking off Carson's distinctive tradedress, and (c) using inferior materials in its goods with the purpose of instead trading on Carson's goodwill. (*Id.* at ¶¶ 132-33.)

Defendants argue, however, that plaintiffs' state law claims are preempted by federal patent law.

**(1)     Preemption of Common Law Torts**

"Federal Circuit law governs whether federal patent law preempts a state law claim." *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1376 (Fed. Cir. 2005). A state law claim is preempted if it "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* at 1377 (quoting *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979)). Federal patent law preempts a state law claim that "offer[s] patent-like protection to intellectual property inconsistent with the federal scheme." *Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1475 (Fed. Cir. 1998). The preemption inquiry focuses on the specific conduct underlying the state law claim. *See Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318 (Fed. Cir. 1998), *overruled in part on other grounds by Midwest Ind. Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1360-61 (Fed. Cir. 1999) (*en banc* in part). In *Hunter Douglas*, the Federal Circuit instructed:

> [t]o determine whether these state law torts are in conflict with federal patent law and accordingly preempted, we assess a defendant's allegedly tortious conduct. If a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law. Conversely, if the conduct is not so protected or governed, then the remedy is not preempted. This approach, which considers whether a state law tort, 'as-applied,' conflicts with federal patent

law, is consistent with that employed by the Supreme Court in cases involving preemption of state unfair competition law.

153 F.3d at 1336. "To survive preemption, [plaintiffs] must plead conduct in violation of [state law] that is separate and independent from its patent law claim." *Veto Pro Pac, LLC v. Custom Leathercraft Mfg. Co.*, No. 3:08-cv-302 (VLB), 2009 WL 276369, at *2 (D. Conn. Feb. 5, 2009). That is, patent law will not preempt state law claims if such claims "include additional elements not found in the federal patent law cause of action and if they are not an impermissible attempt to offer patent-like protection to a subject matter addressed by federal law." *Rodime PLC v. Seagate Tech., Inc.,* 174 F.3d 1294, 1306 (Fed. Cir. 1999).

### (a) Unfair Competition

Under New York law, an unfair competition claim encompasses a broad range of unfair practices. *See American Footwear Corp. v. Gen'l Footwear Co.,* 609 F.2d 655, 662 (2d Cir. 1979). Although the law of unfair competition is "a broad and flexible doctrine" that has been described as "a form of commercial immorality," its reach is not without limits. *Roy Export Co. Establishment v. Columbia Broadcasting Sys.,* 672 F.2d 1095, 1105 (2d Cir. 1982). "[T]he essence of an unfair competition claim is that the defendant has misappropriated the labors and expenditures of another and has done so in bad faith." *Coca-Cola North America v. Crawley Juice, Inc.,* Nos. 09 CV 3259 (JG)(RML), 09 CV 3260 (KAM)(RML), 09 CV 3279 (ERK)(RML), 2011 WL 1882845, at *6 (E.D.N.Y. May 17, 2011) (internal quotation marks and citations omitted); *see Luv n' Care, Ltd. v. Mayborn USA, Inc.*, No. 11 Civ. 2460, 2012 WL 3095065, at *4 (S.D.N.Y. July 30, 2012) ("a plaintiff asserting an unfair competition claim under New York common law must also show that defendant acted in bad faith"); *see also Bongo*

*Apparel, Inc. v. Iconix Brand Group, Inc.,* 856 N.Y.S.2d 22, 2008 WL 41341 (N.Y. Sup. Ct. 2008) ("While there is no complete list of activities which constitute unfair competition under New York law, the essence of an unfair competition claim is that one may not act in bad faith to misappropriate the skill, expenditures, and labor of another"). However, "[n]ot every act, even if taken in bad faith, constitutes unfair competition." *Computer Associates, Inc. v. Simple.com, Inc.*, 621 F. Supp. 2d 45, 53 (E.D.N.Y. 2009) (holding that a plaintiff must show more than commercial unfairness). "The tort is not all- encompassing . . . ; the New York Court of Appeals in rejecting the notion that unfair competition is equivalent to the amorphous term commercial unfairness has stated that misappropriation of another's commercial advantage is a cornerstone of the tort." *Id.* (internal quotation marks and citations omitted); *see Nationwide CATV Auditing Servs., Inc. v. Cablevision Sys. Corp.,* No. 12-CV-3648 (SJF)(ETB), 2013 WL 1911434, at *10 (E.D.N.Y. May 7, 2013) (same). Notably, to act in "bad faith," one must exploit some "commercial advantage which belonged exclusively to [another]." *LoPresti v. Mass. Mut. Life Ins. Co.,* 820 N.Y.S.2d 275, 277 (2d Dep't 2006). In this case, plaintiffs' unfair competition and tortious interference claims again fail due to the absence of allegations of additional tortious conduct that is separate from the patent law cause of action. The tortious conduct proffered is based upon allegations (i) of patent infringement, (ii) that defendants copied an unpatented product; and (iii) of trade dress infringement.

### (i)      Infringement of Plaintiff's Design Patents

Plaintiffs' allegations that defendants engaged in unfair competition by copying and reproducing Carson's products that were covered by the '726 Patent and the '779 patent, including the RimFree™ and the Attach-a-Mag™ products, by systematically infringing

Carson's and other's intellectual property rights in order to unfairly compete with Carson, without more, are preempted by federal patent law because they are predicated upon plaintiffs' claims that Prym's magnifiers infringed Carson's design patents. Notably, these claims essentially repeat the allegations plaintiffs made in their prior amended complaint against defendant Jo-Ann Stores and in the second amended complaint against defendant Prym, which the undersigned dismissed in its previous Memorandum and Order. The Second Circuit and the Supreme Court have made clear that "states cannot, under the guise of regulating unfair competition, grant what is in effect patent protection." *Flexitized, Inc. v. Nat'l Flexitized Corp.*, 334 F.2d 774, 783 n.4 (2d Cir. 1964) (citing *Sears Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 231 (1964)); *see Hunter Douglas*, 153 F.3d at 1335 ("If a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law"); *see also Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 231 (1964) (holding that state law claim for unfair competition cannot be applied to "give protection of a kind that clashes with the objectives of the federal patent laws"). "[T]o survive preemption, [plaintiffs] must plead conduct in violation of [state law] that is separate and independent from its patent law claim." *Veto Pro Pac, LLC v. Custom Leathercraft Mfg. Co.*, No. 3:08-cv-302 (VLB), 2009 WL 276369, at *2 (D. Conn. Feb. 5, 2009). Plaintiffs have failed to do so.

Although plaintiffs argue that they have alleged "an abundance of facts" of wrongful conduct beyond facts constituting patent infringement for their state law claims in the second amended consolidated complaint, including fraud, misrepresentation, dishonesty and economic pressure, (Pls. Mem. of Law in Opp., at 6-13), the factual allegations fail to describe tortious

conduct sufficient to establish the bad faith element for a cognizable claim.   The bare assertions

against the respective defendants that:

(a)    Prym's acts and conduct, alone and/or in combination were undertaken in bad faith to misappropriate the skill, expenditures, and labor of Carson by stealing Carson's patented design features and distinctive trade dress and creating knock-off replicas of Carson's products.  By unlawfully copying Carson's designs and trade dress, mass-producing the knock-off products, and selling them to consumers, Prym has in bad faith exploited a commercial advantage which belongs exclusively to Carson, (Second Am. Consol. Compl. ¶ 94);

(b)    Prym showed its customers samples of Carson's products and simply used a computer to edit out the Carson logo on the photos.  This constituted a further cost-savings for Prym and is yet another example of bad faith misappropriation to Carson's detriment, (*id.* at ¶ 114);

(c)    Prym would not have been able to secure business for Jo-Ann had it not misappropriated Carson's skills, investments, and efforts in bad faith, (*id.* at ¶ 115);

(d)    Jo-Ann's acts and conduct, alone and/or in combination were undertaken in bad faith to misappropriate the skill, expenditures, and labor of Carson by stealing Carson's patented design features and distinctive trade dress and creating knock-off replicas of Carson's products.  By unlawfully copying Carson's designs and trade dress, mass-producing the knock-off products, and selling them to consumers, Jo-Ann has in bad faith exploited a commercial advantage which belongs exclusively to Carson, (*id.* at ¶ 121);

(e)    By encouraging and facilitating Prym's misappropriation of Carson's skills, investments, and efforts, Jo-Ann was able to share in Prym's misappropriation by earning a higher profit on the goods that it retailed for Prym.  Jo-Ann knew or should have known that it would not have been able to earn such a profit if it had rightfully paid for Carson's skills, investments, and efforts by buying from Carson instead of misappropriating the same in bad faith in conjunction with Prym,  (*id.* at ¶ 127);

are conclusory, fail to identify specifically the alleged wrongful conduct undertaken by

defendants apart from patent infringement, constitute a boilerplate recitation of an unfair

competition cause of action, and thus are insufficient to establish a plausible claim of bad faith

misappropriation under New York law.  *See Twombly,* 550 U.S. at 570 (holding that a

"plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do")

(internal quotation marks and citations omitted); *cf. Champion Labs., Inc. v. Parker-Hannifin*

*Corp.,* No. 1:10-CV-02371-OWW-DLB, 2011 WL 1883832, at *14 (E.D. Cal. May 17, 2011)

(dismissing unfair competition claim where allegations were "conclusory, incomplete" and failed

to plead facts to "appropriately identify with particularity the conduct undertaken by [defendant]

that violates unfair competition laws").

Moreover,  plaintiffs' allegations of defendants' bad faith premised on the unlawful

copying, misappropriating, knocking off, and stealing of Carson's patented designs are

insufficient to transform the nature of these claims from patent infringement to an independent

common law claim of unfair competition.  *Cf. Medical Educ. Dev. Servs., Inc. v. Reed Elsevier*

*Group, PLC*, No. 05 Civ. 8665 (GEL), 2008 WL 4449412, at *13 (S.D.N.Y. Sept. 30, 2008)

("allegations of bad faith or ill-intent are insufficient to transform an otherwise equivalent claim

into one that is qualitatively different from a copyright infringement claim")[5].  Rather, these

allegations amplify the scope of plaintiffs' infringement claims by asserting a knowing and

willful patent infringement.  *See* 35 U.S.C. § 284; *Knorr-Bremse Systeme Fuer Nutzfahrzeuge*

*GmbH v. Dana Corp.,* 383 F.3d 1337, 1342-43 (Fed. Cir. 2004) (en banc) ("The concept of

---

[5]"Although patent and copyright law function somewhat differently, courts considering one have historically looked to the other for guidance where precedent is lacking."  *Davis v. Blige,* 505 F.3d 90, 104 (2d Cir. 2007); *see Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417, 439 (1984) (recognizing the similarities between copyrights and patents, noting the "historic kinship between patent and copyright law" and finding it appropriate to refer to cases by analogy).

'willful infringement' is not simply a conduit for enhancement of damages; it is a statement that patent infringement, like other civil wrongs, is disfavored, and intentional disregard of legal rights warrants deterrence. Remedy for will infringement is found on 35 U.S.C. § 284"). As made clear by the Second Circuit, "[a]n action will not be saved by preemption by elements such as awareness or intent, which alter 'the action's scope but not its nature'." *National Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 851 (2d Cir. 1997) (quoting *Computer Assocs. Int'l v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir. 1992)) (internal quotation marks and citation omitted); *cf. Gusler v. Fischer*, 580 F. Supp. 2d 309, 316 (S.D.N.Y. 2008) (same)

Relying on *Hall v. Bed, Bath & Beyond, Inc.*, 705 F.3d 1357 (Fed. Cir. 2013), plaintiffs argue that federal preemption does not apply to the circumstances set forth in the pleadings because the claims concern the bad faith misappropriation of Carson's labor, skill and expenditure and thus "principles of patent law preemption do not override potential causes of action based on unfair commercial practices." *Id.* at 1372. Plaintiff's reliance on this case is misplaced. In *Hall*, the plaintiff had filed an application for a design patent for a Tote Towel in November 2008, thereafter began producing the towel, and while the patent application was pending, contacted defendant in March 2009 to discuss whether defendant would provide retail sales of the Tote Towel. *Id.* at 1361. At a business meeting, plaintiff left samples of the packaged Tote Towel, which were marked "patent pending," with defendant. *Id.* Defendant had copies of the towel manufactured for retail sale. *Id.* The design patent was duly issued in July 2009, and plaintiff sued defendant for patent infringement, unfair competition under the Lanham Act, and for misappropriations under New York law. *Id.* The Federal Circuit reversed the district court's dismissal of plaintiff's claims for patent infringement, unfair competition and

13

misappropriation. *Id.*

Although for the period of time that the defendant copied plaintiff's towel design before the patent was issued, the plaintiff in *Hall* could not assert a cause of action for patent infringement, the Federal Circuit found that New York law provided a potential cause of action based on unfair commercial practices where plaintiff disclosed a proprietary product in the course of their discussion of a business relationship:

> state law cannot protect an unpatented utilitarian or design conception which has been freely disclosed by its author to the public at large . . . . [but] all state regulation of potentially patentable but unpatented subject matter is not *ipso facto* pre-empted by the federal patent laws in the complex balance between the policy of unencumbered movement of unpatented ideas, and principles of morality and fairness that are within state authority.

*Id.* at 1371-72. Unlike the plaintiff in *Hall*, plaintiffs do not allege any period of time that Prym misappropriated plaintiffs' Attach-A-Mag™ or Rim Free™ products before they were patented. To the contrary, the heart of plaintiffs' claims is patent infringement – that Prym misappropriated Carson's labor, skill and expenditure "by stealing Carson's patented design features and distinctive trade dress and creating knock-off replicas of Carson's products."[6]

Nevertheless, plaintiffs argue under an alternative theory that defendants engaged in unfair competition in violation of New York state law by "passing off" Carson's products as its own:

> Prym saved money on presentation costs by showing potential customers (such as Jo-Ann) computer edited samples of Carson products, which it tried to pass-off as

---

[6]Notably there is no allegation in the second amended consolidated complaint that its Clip and Flip™ or SureGrip™ magnifiers had a design patent pending when defendants allegedly copied and reproduced these products. As discussed *infra*, inasmuch as plaintiffs base their claims upon alleged conduct that falls within the ambit of patent infringement, their common law claim is preempted.

> its own.  Thus, Prym misled Jo-Ann and others into believing that it was seeing
> prototypes of Prym's products when it really was not.

(Pls. Mem. in Opp. to Def. Prym at 7 n.1; Second Am. Consol. Compl. at ¶ 114.)[7]  Plaintiffs'

reliance on this alternative theory is misplaced.

"An unfair competition claim may also be predicated on a theory of passing off, the

essence of which is false representation of origin."  *Integrative Nutrition, Inc. v. Academy of*

*Healing Nutrition,* 476 F. Supp.2d 291, 297 (S.D.N.Y. 2007) (internal quotation marks and

citation omitted); *see ITC Ltd. v. Punchgini, Inc.,* 9 N.Y.3d 467, 476 (2007) (New York law has

"long recognized two theories of common-law unfair competition: palming [or passing] off and

misappropriation") (internal quotation marks and citations omitted); *see also Roche Diagnostics*

*GMBH v. Enzo Biochem, Inc.*, No. 04 Civ. 4046 (RJS), 2013 WL 6987614, at *7 (S.D.N.Y. Dec.

6, 2013) (same).  Passing off refers to "the sale of the goods of one manufacturer as those of

another," while misappropriation encompasses the principle that one may not in bad faith

"misappropriate the results of the skill, expenditures and labor of a competitor."  *Id.*  "The

 gravamen of an unfair competition claim for palming [or passing] off is that the labors and

expenditures of the plaintiffs have been misappropriated by the defendants, and are likely to

cause confusion among the purchasing public as to the origin of the product."  *Gameologist*

*Group, LLC v. Scientific Games Int'l, Inc.*, 838 F. Supp. 2d 141, 166 (S.D.N.Y. 2011), *aff'd* 508

F. App'x 31 (2d Cir. 2013) (internal quotation marks and citations omitted).  There are two types

of passing (or palming) off claims: (1) "passing off" in which case "the alleged infringer sells its

products as the plaintiff's," and (2) "reverse passing off" in which case "the alleged infringer

---

[7]The second amended consolidated complaint does not state this argument directly but it
is addressed in the plaintiffs' brief and can be inferred from the pleadings.

sells the plaintiff's products as its own." *Integrative Nutrition, Inc.,* 476 F. Supp.2d at 297 (internal quotation marks and citations omitted).

Plaintiffs' unfair competition claim centers on the allegation that Prym showed potential customers, including Jo-Ann Stores, samples of Carson's products which it tried to pass off as its own. As such the cause of action is principally a claim of "reverse passing off" – that is, a claim that the defendant Prym misrepresented the plaintiffs' work as its own. *See Colour & Design v. Untied States Vinyl Mfg. Corp.,* No. 08 Civ. 8332, 2005 WL 1337864, at *6 (S.D.N.Y. June 3, 2005) (holding that in a "reverse passing off case," the alleged infringer sells the plaintiff's product as its own); *cf. American Movie Classics Co. v. Turner Enter. Co.*, 922 F. Supp. 926, 934 (S.D.N.Y. 1996). A claim predicated on "reverse passing off," however, is preempted by federal law because the claim is essentially a claim for the unauthorized use of a patented product and does not contain an extra element to qualitatively differentiate it from one of patent infringement. *See id.*; *cf. Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 322 (S.D.N.Y. 2010); *Integrative Nutrition, Inc.,* 476 F. Supp.2d at 297

Likewise plaintiffs unfair competition premised on defendant Jo-Ann Store's alleged conveyance of commercially valuable pricing information to Prym, *viz.*

> Jo-Ann prejudiced Carson its efforts to compete with Prym by wrongfully disclosing Carson's confidential pricing and sales information to Prym, before telling Carson that it would fairly evaluate business pitches from Prym, Carson and others. Jo-Ann's Code of Business Conduct and Ethics forbids the dissemination of unpublished financial or pricing information to persons outside of Jo-Ann, such as Prym, (Second Am. Consol. Compl. ¶ 126.),

is insufficient to establish the requisite extra element to preclude preemption[8]. In their opposition

---

[8]Plaintiffs' claims of unfair competition based on the defendants' alleged misappropriation of plaintiffs' goodwill by using Carson's sales information in order to "knock

papers, plaintiffs argue:

> Jo-Ann disclosed confidential Carson sales information to Prym that it should not have disclosed so that Prym could pick the most profitable items to counterfeit. Jo-Ann's disclosure of this confidential information to Prym to the detriment of Carson was a violation of Jo-Ann's own Code of Business Conduct and Ethics, which Carson relied upon in doing business with Jo-Ann. Thus, Jo-Ann's own conduct includes an element of misappropriation and dishonesty.

(Pls. Mem. in Opp. to Def. Jo-Ann Stores, at 6.)

Even assuming *arguendo* that Jo-Ann Stores conveyed confidential pricing information to Prym which Prym subsequently used to determine which of Carson's products it would sell as its own, these allegations at most give rise to a claim of unfair competition involving "reverse passing off. " *Colour & Design*, 2005 WL 1337864, at *6 (holding that in a "reverse passing off case," infringer attempts to sell the plaintiff's product as its own); *cf. Medical Educ. Dev. Servs., Inc. v. Reed Elsevier Group, PLC*, No. 05 Civ. 8665 (GEL), 2008 WL 4449412, at *13 (S.D.N.Y. Sept. 30, 2008). As discussed above, such a claim is preempted because it is the functional equivalent of plaintiffs' patent infringement claims. Moreover, Jo-Ann Store's alleged breach of its own internal code of ethics not only fails to describe tortious conduct under New York state law but such an allegation of dishonesty is insufficient to transform an otherwise equivalent claim of patent infringement into a misappropriation claim that is qualitatively different.

Finally, plaintiffs' allegation that Jo-Ann Stores unfairly competed by "refusing to

---

off" Carson's patented products and sell them as their own, (Second Am. Consol. Compl. ¶¶ 99-101, 116, 122-23, 128), is similarly unavailing because such a claim fails to establish a bad faith misappropriation that is distinct from their patent infringement claims. Moreover, "under New York's unfair competition law, a defendant misappropriates a plaintiff's goodwill, when it sells its product through misleading the public into thinking that the product is sponsored by or derived from plaintiff or plaintiff's product," as opposed to passing it off as their own. *Bongo Apparel, Inc.*, 2008 WL 41341, at *13.

continue its longtime supplier relationship with Carson" and "pretending to fairly evaluate Carson as a supplier with no intention of continuing its business relationship," (Second Am. Consol. Compl. ¶ 120), again fails because there is no claim in the second amended consolidated complaint that Jo-Ann Stores breached a contractual obligation to do business with Carson. As a retailer, Jo-Ann Stores does not unfairly compete by declining to do business with Carson, a wholesaler, nor are there any allegations in the complaint that would otherwise sustain such a claim.

### (ii)    Infringement of an Unpatented Product

Plaintiffs' allegation that defendants engaged in unfair competition by copying and reproducing the Clip & Flip™ magnifier is insufficient to sustain a common law claim. As discussed in this Court's prior Memorandum and Order, the complaint does not allege that this product was protected by a patent. (Second Am. Consol. Compl. ¶¶ 26-30; Pls. Mem. in Opp. to Def. Prym at 2.) As such, the product is in the public domain. As previously discussed both in the prior and instant Memorandum and Orders, federal patent laws limit the states' ability to regulate unfair competition. State law is preempted when it enters "a field of regulation which the patent laws have reserved to Congress." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 167 (1989) (internal quotation marks and citation omitted). Thus, where state law offers "patent-like protection for ideas deemed unprotected under the present federal scheme, [state law] conflicts with the strong federal policy favoring free competition of ideas." *Id.* Consistent with the preemptive effect of federal patent law, the copying of a product that is not patented that exists in the public domain is not actionable. In *Sears, Roebuck & Co.,* 376 U.S. 225 (1964) and *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234 (1964), the Supreme

Court explained that

> when an article is unprotected by a patent or a copyright, state law may not forbid others to copy that article. To forbid copying would interfere with the federal policy . . . of allowing free access to copy whatever the federal patent and copyright laws leave in the public domain.

*Compco Corp.*, 376 U.S. at 237. Indeed, [a] state may not, through its law banning unfair competition undermine federal patent rights by prohibiting the copying of an article that is protected by neither a federal patent nor a federal copyright." *20ᵗʰ Century Wear, Inc. v. Sanmark-Stardust, Inc.,* 747 F.2d 81, 92 n.15 (2d Cir. 1984); *cf. Gemveto Jewelry Co. v. Jeff Cooper Inc.,* 800 F.2d 256, 259 (Fed. Cir. 1986) (vacating injunction predicated upon a state unfair competition claim where the method of implementing the injunction was broader than permissible "in view of the *Sears* and *Compco* decisions which hold that copying of the article itself that is unprotected by the federal patent and copyright laws cannot be protected by state law"). Accordingly, plaintiffs' claim of unfair competition based on the allegation that defendants copied an unpatented product of plaintiffs is preempted and cannot serve as a basis for a cognizable claim under state law.[9]

### (iii)    Trade Dress Infringement

Plaintiffs assert that the designs of the Clip & Flip™ and the SureGrip™ magnifiers support their common law causes of action based on allegations that defendants infringed upon the designs and protected trade dress affiliated with these products. Plaintiffs' assertions are

---

[9]Likewise, to the extent that plaintiffs rely on an allegation that defendants copied and reproduced the product of plaintiffs identified as the SureGrip™ magnifier to support its common law unfair competition claim, their reliance is misplaced. As with the Clip & Flip™ magnifier, there is no allegation in the complaint that it is protected by a patent, and therefore it is preempted by federal patent law.

unavailing.

A species of a common law claim for unfair competition is trade dress infringement. *See Medisim Ltd. v. BestMed LLC*, 910 F. Supp. 2d 591, 606 (S.D.N.Y. Nov. 28, 2012). A product's trade dress is its "total image and overall appearance . . . as defined by its overall composition and design, including size, shape, color, texture and graphics." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27, 31 (2d Cir. 1995) (citations omitted). "In order to prevail in an action for trade dress infringement in New York, a plaintiff must prove (1) that its trade dress is distinctive or has acquired secondary meaning; and (2) that a likelihood of confusion exists between its product and the defendant's product." *Eyal R.D. Corp. v. Jewelex New York Ltd.,* 784 F. Supp. 2d 441, 448 (S.D.N.Y. 2011) (citations omitted). In addition, "a plaintiff must establish that the trade dress is not functional." *Id.* "The elements of unfair competition under New York law closely parallel the elements of unfair competition under the Lanham Act." *Medisim Ltd.,* 2012 WL 5954757, at *5; *see Lyons Partnership, L.P. v. D & L Amusement & Enter., Inc.,* 702 F. Supp. 2d 104, 115 (E.D.N.Y. 2010). "Both are directed at conduct by which a defendant has misappropriated the labors and expenditures of another." *Lyons Partnership, L.P.,* 702 F. Supp. 2d at 115 (internal quotation marks and citations omitted). However, under New York law, "a plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief as well as make a showing of bad faith." *Id.* (internal quotation marks and citation omitted). In sum, a common law unfair competition claim under New York law "is identical to a Lanham Act claim, save for the additional requirement that plaintiff show defendant's bad faith." *Heptagon Creations, Ltd. v. Core Group Marketing LLC,* No. 11 Civ. 1794 (LTS) (AJP), 2011 WL 6600267, at *9 (S.D.N.Y. Dec. 22, 2011).

With respect to the Clip & Flip™ magnifier, although the second amended consolidated complaint describes the design elements of the Clip & Flip™ , (Second Am. Consol. Compl. ¶¶ 26-32), the complaint does not allege a claim for trade dress infringement in the design of this product, and plaintiffs confirm in their opposition papers that "Count 7 has nothing to do with the Clip & Flip™ [magnifier]," and that they have not asserted a Lanham Act claim with respect to this product.[10]  (Pls. Mem. in Opp. to Def. Prym at 15 & n.1.)

With respect to the plaintiffs' unfair competition claim that defendants infringed upon the purported trade dress of the SureGrip™ product, plaintiffs' conclusory allegation that defendants copied and reproduced the distinctive elements of the SureGrip™ and sold "knock-off products," without proffering any facts to make that conclusion plausible, is insufficient to establish the bad faith requirement for a cognizable claim under New York law.  In any event, as discussed *infra*, since plaintiffs have not adequately alleged a trade dress infringement claim under the Lanham Act, their claim for common law unfair competition necessarily fails.  *See Heptagon Creations,*

_____

[10]To the extent that plaintiffs assert that defendants sold and copied portions of "Carson's written marketing materials associated with the Clip & Flip™ magnifier" to support their common law claims and to establish the "likelihood of confusion" element of their trade dress infringement claim, (Second Am. Consol. Compl. ¶¶ 30-31, 93, 120), for the reasons stated above, the second amended consolidated complaint asserts trade dress infringement only as to the SureGrip™ product.  Moreover, to the extent that plaintiffs may be seeking a claim of copyright infringement in the marketing materials, *see Eyal R.D. Corp.,* 784 F. Supp. 2d at 445 ([t]he Copyright Act preempts a state law claim that protects 'legal or equitable rights that are the equivalent to any of the exclusive rights within the general scope of copyright as specified'") (quoting 17 U.S.C. § 301)), plaintiffs have again failed to allege any harms in their complaints that are separate from the alleged copying of the materials, *see Computer Assocs. Int'l, Inc,* 982 F.2d at 716 ("[i]f an 'extra element' is required of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie 'within the general scope of copyright,' and there is no preemption.  The extra element must change the nature of the action so that it is qualitatively different from a copyright infringement claim").  Accordingly, such a claim would fall within the ambit of the Copyright Act and be preempted.

*Ltd.* 2011 WL 6600267, at *9.

Accordingly, defendants' motions to dismiss Counts Eight and Nine of the second amended consolidated complaint are granted.

### (b)    Tortious Interference with Prospective Business Relations

In order to prevail on a claim for tortious interference with prospective business relations under New York law, a plaintiff must prove that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003); *see S & L Vitamins Inc. v. Australian Gold, Inc.*, 521 F. Supp. 2d 188, 217 (E.D.N.Y. 2007) (acknowledging that a key element of this claim is that plaintiff must allege that a "defendant's conduct was motivated solely by malice or to inflict injury by unlawful means, beyond mere self-interest or other economic considerations") (internal quotation marks and citation omitted).  As previously discussed, patent law will not preempt state law claims if such claims "include additional elements not found in the federal patent law cause of action and if they are not an impermissible attempt to offer patent-like protection to subject matter addressed by federal law." *Rodime PLC*, 174 F.3d at 1306.  Tortious interference with prospective business relations "requires proof that the defendant intentionally engaged in acts wrongful by some measure other than the fact of the interference itself which are designed to disrupt an economic relationship between the plaintiff and another." *Id.* (citations omitted).  "Wrongful means includes physical violence, fraud, misrepresentation, civil suits, criminal prosecutions, and some degree of economic pressure, but more than simple persuasion is required," *Meadow Ridge*

*Capital, LLC v. Levi*, 920 N.Y.S.2d 242, 2010 WL 4668323, at *14 (N.Y. Sup. Ct. 2010), and is

demanding in this context because a plaintiffs' "mere interest or expectation in establishing a

contractual relationship must be balanced against the competing interest of the interferer as well

as the broader policy of fostering healthy competition." *Catskill Dev., L.L.C. v. Park Place Enter.*

*Corp.,* 547 F.3d 115, 132 (2d Cir. 2008) (citations omitted). Thus, to qualify as wrongful means,

a defendant's conduct must (1) "must amount to an independent crime or tort"; (2) "must have

been taken solely out of malice"; or (3) "amount to extreme and unfair economic pressure."

*Friedman v. Coldwater Creek, Inc.,* 551 F. Supp. 2d 164, 170 (S.D.N.Y. 2008), *aff'd* 321 F.

App'x 58 (2d Cir. 2009) (citation omitted). Here, plaintiffs' claim of tortiouis interference with

business relations against defendant Prym is based on the same factual allegations as their

common law unfair competition claim and likewise fails.

Plaintiffs have not set forth any allegations either in the second amended consolidated

complaint or in their opposition papers that Prym's conduct was motivated solely by malice or to

inflict injury beyond the prospect of economic gain. *See Shared Communications Servs. of ESR,*

*Inc. v. Goldman Sachs & Co.,* 803 N.Y.S.2d 512, 513 (1st Dept. 2005) (holding plaintiff failed to

state a claim for tortious interference with prospective business relations where it "failed to

include the necessary allegation that defendant's conduct was motivated solely by malic or to

inflict injury by unlawful means, beyond mere self-interest or other economic considerations")

(citation omitted); *Cerberus Capital Mgmt., L.P. v. Snelling & Snelling, Inc.,* No. 60045/2005,

2005 WL 4441899, at *7 (N.Y. Sup. Ct. Dec. 19, 2005) (holding "the complaint contains nothing

indicating the . . . defendants acted beyond mere self-interest or other economic considerations.

This is insufficient to support a claim for tortious interference with prospective business

relations").

Rather, plaintiffs assert that the tortious interference claim is based on defendant Prym's

wrongful means and exertion of unfair and improper economic pressure to interfere with

Carson's relationship with Jo-Ann Stores.  As to wrongful means, plaintiffs plead the following:

(1)     Upon information and belief, Jo-Ann asked Prym to provide it with a line of
        knock-off products that "match up" precisely to Carson's so that it could deceive
        its customers into thinking that its supplier of magnifiers had not changed and so
        that its customers would not become wary of the new products.
(2)     Prym was able to cut costs by failing to exercise control over its products.
(3)     Prym represented on its packaging that its magnifiers were able to achieve certain
        multiples of magnification.  Yet Prym continued to market and sell its products,
        knowing that they did not even substantially meet the represented magnification
        specifications.  At times, the magnification produced by Prym's products was
        25% or more under what was represented by the product's packaging.  Prym knew
        that the consuming public values magnifiers that are capable of achieving higher
        magnification.  Nonetheless, Prym misled the consuming public and used its
        savings to displace Carson as Jo-Ann's supplier.
(4)     Furthermore, at times, when Prym gave presentations to Jo-Ann and others, Prym
        did not have a sample of its knock-off to show the customer.  Instead, Prym
        showed its customers samples of Carson's products and simply used a computer
        to edit out the Carson logo on the photos.  This constituted further cost-savings for
        Prym and is yet another example of bad faith misappropriation to Carson's
        detriment.

(Second Am. Consol. Compl. ¶¶ 98, 109, 110, 114; Pls. Mem. in Opp. to Def. Prym at 7.)

Plaintiffs' allegations, however, fail to describe any wrongful conduct, *viz*. the fraud,

misrepresentation or dishonesty, that was directed against Jo-Ann Stores, the party with which

plaintiffs seek to have a relationship.  *See Carvel Corp.,* 3 N.Y.3d at 192 ("conduct constituting

tortious interference with business relations, is, by definition, conduct directed not at the plaintiff

itself, but a the party with which the plaintiff has or seeks to have a relationship").  To the

contrary, the second amended consolidated complaint is replete with allegations that Prym and

Jo-Ann Stores acted in concert and that "wrongful means" were undertaken by both defendants.

*See* Second Am. Consol. Compl. ¶¶ 124 ("Jo-Ann was aware of, approved of, and profited from the bad faith means Prym used to knock-off Carson's products"); *id*. at ¶ 127 ("[b]y encouraging and facilitating Prym's misappropriation of Carson's skills, investments, and efforts, Jo-Ann was able to share in Prym's misappropriation by earning a higher profit").

Likewise, plaintiffs' assertion of tortious interference based on unfair economic pressure is equally without merit because the second amended consolidated complaint does not allege conduct directed at Jo-Ann Stores:

> Prym exerted unfair economic pressure on Carson by pricing its goods at a predatory level for the specific purpose of ousting Carson as Jo-Ann's vendor. Prym was only able to price its goods at its predatory level by misappropriating Carson's skills, efforts, and labor in designing and developing unique magnifier designs and marketing materials, misappropriating Carson's goodwill by knocking off Carson's distinctive tradedress, and using inferior materials in its goods with the purpose of instead trading on Carson's goodwill.

(Second Am. Consol. Compl. ¶ 133; Pls. Mem. in Opp. to Def. Prym at 7-8.) Moreover, such allegations of predatory pricing by Prym are not plausible on their face. Predatory pricing occurs when "a single firm, having a dominant share of the relevant market, cuts its prices in order to force competitors out of the market, or perhaps to deter potential entrants from coming in." *Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 266 (2d Cir. 2001) (internal quotation marks and citation omitted). To establish predatory pricing, a plaintiff must prove: "(1) that the prices complained of are below an appropriate measure of its rival's costs, and (2) that the predatory rival has a dangerous probability of recouping its investment through a below cost pricing scheme." *Id.* (internal quotation marks and citation omitted). "Because of the difficulty inherent in distinguishing procompetitive prices from predatory conduct, courts often approach predatory pricing claims with caution." *Affinity LLC v. GfK Mediamark Research &*

*Intelligence, LLC*, No. 12 Civ. 1728 (RJS), 2013 WL 1189317, at *3 (S.D.N.Y. Mar. 25, 2013) (citation omitted). The second amended consolidated complaint alleges not that Prym had a dominant market share, but instead that Carson had the dominant market share, *see* Second Am. Consol. Compl. ¶ 2 ("Carson is the largest distributor of magnifiers in the United States"). To the extent that Prym's pricing practices resulted in lower prices being charged, "[t]his is not antitrust injury; indeed, cutting prices in order to increase business often is the very essence of competition." *Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 338 (1990) (internal quotation marks and citation omitted).

In sum, plaintiffs have not pleaded conduct in violation of state law that is separate from their federal patent law claims. The claim for tortious interference with prospective business relations is based on the identical set of transactional facts as the unfair competition claim, and for the same reasons discussed above, is preempted by federal patent law. Accordingly, defendant Prym's motion to dismiss Count Ten of the second amended consolidated complaint is granted.

**(C)     Plaintiffs' Claim for Trade Dress Infringement**

Section 43(a) of the Lanham Act provides:

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which [] is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person [] shall be liable in a civil action by any person who believes he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A). This protection extends to a product's trade dress which

"encompasses the overall design and appearance that make the product identifiable to consumers." *Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 269 F.3d 114, 118 (2d Cir. 2001). "To plead a claim of trade dress infringement involving the appearance of a product, [a plaintiff] must allege that (1) the claimed trade dress is non-functional; (2) the claimed trade dress has secondary meaning; and (3) there is a likelihood of confusion between the plaintiff's good and the defendant's." *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 F. App'x 389, 391 (2d Cir. 2003) (citation omitted). "A plaintiff must also offer a precise expression of the character and scope of the claimed trade dress,"*id.* (internal quotation marks and citation omitted), and articulate the "elements of their product design with specificity to be afforded trade dress protection," *Shevy Custom Wigs, Inc. v. Aggie Wigs.,* No. 06 Civ. 1657 (JG), 2006 WL 3335008, at *4 (E.D.N.Y. Nov. 17, 2006). The Second Circuit has cautioned that in analyzing trade dress claims, "courts must not lose sight of the underlying purpose of the Lanham Act, which is protecting consumers and manufacturers from deceptive representations of affiliation and origin." *Landscape Forms, Inc. v. Columbia Cascade Co.,* 113 F.3d 373, 375 (2d Cir. 1997). In doing so, the Court has explained that the trade dress "analysis requires courts to balance the policy of protecting consumers from confusion against that in favor of free competition. *Id*. at 377, 380; *see ID7D Co. v. Sears Holding Corp.*, No. 3:11cv1054(VLB), 2012 WL 1247329, at *6 (D. Conn. Apr. 13, 2012) (same).

"[C]ourts have been reluctant to extend trade dress protection to a product's design (as opposed to its packaging) and to an entire line of products (as opposed to a single product)." *ID7D Co.*, 2012 WL 1247329, at *6 (internal quotation marks and citations omitted). The Second Circuit explained:

> The policy of protecting competition is at least as strongly implicated when . . . product designs or configurations are claimed as trade dress. While trademarking a generic term would create a monopoly in a necessary word or phrase, granting trade dress protection to an ordinary product design would create a monopoly in the goods themselves. For this reason, courts have exercised particular caution when extending protection to product designs.

*Landscape Forms, Inc.,* 113 F.3d at 380 (internal quotation marks and citation omitted). Thus, "trade dress protection for product design . . . entails greater risk of impinging on ideas as compared with protection of packaging or labeling." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116 (2d Cir. 2001). Here, plaintiffs' claimed trade dress seeks protection for a product design, to wit, "an ornamental design and ornamental appearance of a magnifier, which has been marketed and sold under the trademark Suregrip." (Second Am. Consol. Compl. ¶ 22.)

### (1)     Functionality

Plaintiffs bear the burden of proving the alleged trade dress is non-functional, 15 U.S.C. § 1125(a)(3), and there is a "statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection," *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001). "[T]rade dress is functional, and thus not protectable, when it is essential to the use or purpose of the article," *Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 F. App'x 615, 620 (2d Cir. 2008) (citation omitted), or "if it affects the cost or quality of the article," *Yurman Design, Inc.*, 262 F.3d at 116. Moreover, a trade dress claim based on "[a] product design is functional when certain features of the design are essential to effective competition in a particular market." *Cartier, Inc.*, 294 F. App'x at 620 (internal quotation marks and citation omitted); *see also ID7D Co.,* 2012 WL 1247329, at *6 ("in cases involving an aesthetic feature, the dress is also functional if the right to use it exclusively would put competitors at a significant non-reputation-related disadvantage. Thus, the non-functionality requirement protects competition even at the cost of potential consumer confusion"). That is,

"the absence of alternative constructions performing the same function . . . renders the feature functional." *Brandir Int'l, Inc. v. Cascade Pacific Lumber Co.,* 834 F.2d 1142, 1148 (2d Cir. 1987).

The Second Circuit has stressed that the "test of non-functionality in trade dress claims that are based on product design is even more critical than in trade dress claims based on packaging, because a monopoly right in the design of the product itself is more likely to preclude competition," and "[a]s with the overbreadth element, rigorous application of the requirement of non-functionality is necessary to avoid undermining the carefully circumscribed statutory regimes for the protection of useful and ornamental designs under federal patent and copyright law." *Yurman Design, Inc.*, 262 F.3d at 116 (internal quotation marks and citations omitted). The Court's concern in this regard reflects the Supreme Court's insistence that "[c]onsumers should not be deprived of the benefits of competition with regard to the utilitarian and esthetic purposes that product design ordinarily serves by a rule of law that facilitates plausible threats of suit against new entrants based upon alleged inherent distinctiveness." *Wal-Mart Stores v. Samara Bros., Inc.,* 529 U.S. 205, 213 (2000). Where, as here, the asserted trade dress extends to the "overall look" of the combination of features comprising a product, the court must evaluate the functionality of those features taken together. *See Jeffrey Milstein, Inc.,* 58 F.3d at 32.

Plaintiffs plead that the non-functional and distinctive elements of the SureGrip™ are:

a. the size, placement, and oval-shape of the label on the magnifier's handle;
b. the color scheme of the magnifier in which the magnifier rim and the label on the handle are somewhat lighter in color than the handle, which is a motif that is incorporated into many of Carson's magnifier and strengthens its brand;
c. the positioning of a smaller magnifying lens at the top of the handle surrounded by a lighter color than the remainder of the handle; and
d. the distinctive ledge on the rim of the magnifying lens.

(Second Am. Consol. Compl. ¶ 23.) Plaintiffs allege:

the above-enumerated elements are non-functional because the failure of a competitor to incorporate these elements into a functionally similar product would not put it at a competitive disadvantage other than the fact that a consumer would not associate the product with Carson. The above enumerated elements perform no function in SureGrip except to associate the SureGrip with Carson. Additionally, the above enumerated elements are non-functional because:

a.   even if a competitor wanted to inscribe its brand on the handle of the magnifier, it need not do so on an oval background placed at that particular location on the handle;

b.   there is no legitimate competitive reason to adopt the light-dark color scheme exhibited by the SureGrip and to use that color scheme for the oval label on the handle as well;

c.   there is no legitimate competitive reason to incorporate the light-dark color scheme around the portion of the handle containing the secondary lens; and

d.   the distinctive ledge on the rim of the magnifying lens gives Carson no non-reputation related advantage in the marketplace.

(*Id*. at ¶ 24.)

This is sufficient to support a reasonable inference that the SureGrip™ magnifier's trade dress is non-functional. The second amended consolidated complaint contains allegations that the SureGrip's™ distinctive combination of design features on its handle and rim is not essential to the purpose of a magnifier as it performs no function except to associate this product with Carson. The second amended consolidated complaint also asserts that having to employ a different appearance and a different arrangement of (i) shape, color scheme, and inscription on a magnifier's handle; (ii) a smaller magnifying lens on the handle; or (iii) rim ledge would not put competitors in the optical market at a competitive disadvantage. That is, effective competition in the substantial market for magnifiers would not require the use of essentially the same dark/light color scheme, the oval shaped label placement on the magnifier's handle or the rim ledge as found on the SureGrip™. *See Landscape Forms, Inc.*, 70 F.3d at 254 ("in order for a court to find a product design functional, it must first find that certain features of the design are essential to effective competition in a particular market"). The second amended consolidated complaint

further avers that the SureGrip™ trade dress would not prevent others from creating alternative, competitive designs, noting that "even if a competitor wanted to inscribe its brand on the handle of the magnifier, it need not do so on an oval background placed at that particular location on the handle." (Second Am. Consol. Compl. ¶ 24.)  Finally, an inference can be made that the distinctive ledge on the rim does not affect the quality or cost of the magnifier as the plaintiffs allege that the distinctive ledge gives Carson no non-reputation related advantage.  *See Knitwaves, Inc. v. Lollytogs Ltd.,* 71 F.3d 996, 1006 (2d Cir. 1995).

Nevertheless, there are fatal defects in plaintiffs' trade dress claim.  As will be discussed *infra*, the eligibility of the SureGrip™ magnifier's design for trade dress protection falls on plaintiffs' failure to sufficiently plead (i) that the trade dress of the SureGrip™ magnifier has acquired secondary meaning in the marketplace; (ii) that there is a  likelihood of consumer confusion; and (iii) a precise description of how the trade dress design elements are distinctive.

**(2)    Secondary Meaning**

"A product's [unregistered] trade dress is protected under the Lanham Act if it is not functional and if it is either inherently distinctive or has acquired secondary meaning in the marketplace." *Nora Beverages, Inc.*, 269 F.3d at 119;  *Blumenthal Distributing, Inc. v. Executive Chair, Inc.,* No. CV-10-1280, 2010 WL 5980151, at *7 (E.D.N.Y. Nov. 9, 2010) ("To merit legal protection, a product's trade dress must be both sufficiently distinctive to distinguish its mark from those of others and nonfunctional.").  In a trade dress claim premised on a particular product design (as opposed to product packaging or labeling), as in this case, plaintiffs "must make the additional showing that its design has acquired secondary meaning in the marketplace by which it is identified with its producer or source." *Blumenthal Distributing, Inc.,* 2010 WL 5980151, at *7  (internal quotation marks and citation omitted); *see Yurman Design, Inc.*, 262

F.3d at 116 (holding a product has acquired secondary meaning when "in the minds of the public, the primary significance of the [dress] is to identify the source of the product rather than the product itself") (internal quotation marks and citation omitted); *see also Urban Group Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.,* No. 12 Civ. 3599, 2013 WL 866867, at *3 (S.D.N.Y. Mar. 8, 2013) ("[t]rade dress is considered to have attained secondary meaning when a consumer immediately associates the dress of the product with its source") (internal quotation marks and citation omitted). To determine whether secondary meaning has attached, the court considers the following factors: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) the length and exclusivity of the mark's use." *Cartier, Inc.*, 294 F. App'x at 618 (internal quotation marks and citations omitted). "[N]o single factor is determinative, and every element need not be proved." *L. & J.G. Stickley, Inc. v. Canal Dover Furniture Co.,* 79 F.3d 258, 263 (2d Cir. 1996) (internal quotation marks and alterations and citation omitted).

Plaintiffs aver that their trade dress has acquired secondary meaning in the relevant market because:

a. Since September 1998, Carson has continuously, exclusively, and extensively marketed, promoted and sold well over a million magnifiers comprising the ornamental design and overall appearance illustrated in Exhibit F throughout the United States, and the market has come to associate the above numerated and non-functional distinctive elements of the SureGrip with Carson and the high quality of products;

b. during the same time, Carson has expended substantial amounts of time, efforts, and money advertising SureGrip, including advertisements in various periodicals, such as Drug Store News, Craft and Needlework Age, Crafttrends Magazine, and Photo Trade news, and the distribution of videos discussing the SureGrip's features and quality;

c. the SureGrip has been a sales and marketing success for Carson and has captured a more-than-expected market share;

d. the SureGrip has been featured in numerous periodicals;

e.　consumers give SureGrip excellent reviews, earning SureGrip, by way of example, a 4.6 out of 5 star customer rating on amazon.com, a 4.7 out of 5 rating on opticsplanet.com, a 5 out of 5 rating on officedepot.com, a 4.3 out of 5 rating on bhphotovideo.com;

f.　upon information and belief, if shown a magnifier with the above numerated non-functional and distinctive elements of the SureGrip, the average consumer would associate the product as coming from a single source, known for its high quality;

g.　Carson has incorporated the light-dark color scheme for the SureGrip into many of its other magnifier products to further strengthen this feature's association in the mind of the consumer with Carson; and

h.　upon information and belief, Prym and Jo-Ann plagiarized the SureGrip with the specific intent to confuse the consuming public because the SureGrip has been marketed in Jo-Ann's stores for a long time and because the market would not have reacted well if it knew that Jo-Ann had changed its supplier.

(Second Am. Consol. Compl. ¶ 25.)

Plaintiffs have failed to allege facts that would support a plausible inference that their trade dress acquired secondary meaning. First, with respect to advertising expenditures, although plaintiffs assert in conclusory fashion that they expended substantial amounts of time, effort and money to advertise in various listed periodicals, "that allegation is not supportive of a finding of secondary meaning because there is no contention that any of those advertisements . . . stressed or emphasized the alleged trade dress." *Dick's Sporting Goods, Inc.,* 2013 WL 866867, at *3; *see Braun Inc. v. Dynamics Corp. of Am.,* 975 F.2d 815, 826-27 (Fed. Cir. 1992) (finding as irrelevant to secondary meaning, $5.5 million in advertising expenditures because plaintiff "did not proffer evidence establishing that the advertising effectively created secondary meaning" in the alleged trade dress) (citations omitted). Likewise, plaintiffs' cursory reference to consumer surveys "based upon information and belief" the average consumer "would" associate the enumerated feature as coming from a single source is speculative and insufficient to support an inference of secondary meaning. Next, the second amended consolidated complaint does not plead that the SureGrip has received unsolicited media coverage, but instead alleges the SureGrip has been featured in numerous periodicals and has received excellent consumer reviews, and

Carson expended substantial amounts of money to advertise SureGrip in various periodicals. Moreover, plaintiffs' blanket assertion that SureGrip has been a sales and marketing success, has sold over a million magnifiers and has captured a more-than-expected market share, without any details of plaintiffs' efforts to associate the SureGrip™'s trade dress with Carson, fails to support an inference of consumer identification with the alleged trade dress. *See Dick's Sporting Goods, Inc.,* 2013 WL 866867, at *4 (" [s]ubstantial sales of a product, if . . . unaccompanied by a concomitant effort on the seller's part to associate the product's trade dress with the source of the product rather than the product itself, do not establish that a product's trade dress has acquired secondary meaning") (citing *Braun Inc.,* 975 F.2d at 827 ("large consumer demand for the plaintiff's product does not permit a finding of secondary meaning, because strong market demand for a product usually indicates product desirability not secondary meaning")); *see also Heptagon Creations, Ltd.*, 2011 WL 6600267, at *8 (finding plaintiff failed to allege secondary meaning where plaintiff alleged its products had been featured in magazines, but the complaint contained no allegations as to plaintiff's "advertising expenditures or consumer surveys linking the [claimed trade dress] to a particular source"). Further, the second amended consolidated complaint does not allege any facts of attempts to plagiarize the trade dress, but rather avers generally that "upon information and belief, defendants plagiarized the SureGrip™ and "Carson has been forced to enforce its trademarks and tradedress against others in the past who have also sought to trade on Carson's goodwill." (Second Am. Consol. Compl. ¶ 85.) Such assertions, without more, fail to provide a sufficient basis for secondary meaning. Finally, while the second amended consolidated complaint alleges that Carson has continuously and exclusively sold the SureGrip since 1998 and that the market has come to associate the distinctive elements of the SureGrip with Carson, there are no specific facts alleged to support this conclusory claim.

In sum, absent from the pleadings are facts concerning actual consumer surveys, unsolicited media coverage or specific attempts to plagiarize the trade dress at issue which would support an inference that the trade dress of the SureGrip™ acquired secondary meaning. In addition, plaintiffs' general and cursory allegations that Carson has sold, marketed and promoted the SureGrip™ trade dress design since 1998, has spent substantial sums of money advertising the product design and that these designs have been a sales and marketing success, with no factual enhancement linking the claimed trade dress to Carson, fail to support an inference that SureGrip™ has acquired secondary meaning. *See, e.g., Eyal R. D. Corp.,* 784 F. Supp. 2d at 445, 448 (holding plaintiff failed to plead secondary meaning in its trade dress despite alleging its "exclusive and widespread use" of the trade dress; it "has acquired enormous value and recognition in the United States"; its "trade dress is well known to the consuming public" and within the trade "as the exclusive and unique source" identifier); *Urban Group Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.,* No. 12 Civ. 3599 (RWS), 2012 WL 3240442, at *7 (S.D.N.Y. Aug. 7, 2012) (holding that while the complaint alleged facts describing the amount of time plaintiffs used the alleged trade dress, amount of sales relating the product to the trade dress and the coverage by the media, because the complaint "fail[ed] to allege facts relating to [p]laintiff's advertising expenditures, consumer surveys, marketing coverage or prior attempts to plagiarize [p]laintiff's trade dress, [p]laintiff has failed to adequately allege its trade dress to have acquired a secondary meaning").

### (3)     Likelihood of Confusion

"The likelihood-of-confusion inquiry turns on whether numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance into the marketplace" of the mark or dress of defendant. *Playtex Prods., Inc. v.*

*Georgia-Pacific Corp.,* 390 F.3d 158, 161 (2d Cir. 2004), *superseded on other grounds by statute as recognized in Starbucks Corp. v. Wolfe's Borough Coffee, Inc.,* 588 F.3d 97, 108 (2d Cir. 2009); *see Conte v. Newsday, Inc.,* No. 06-CV-4859 (JFB)(ETB), 2013 WL 978711, at *20 (E.D.N.Y. Mar 13, 2013) (same). There must be a "probability of confusion, not a mere possibility." *Id.* (citation omitted). Courts apply the factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), in order to assess the likelihood of confusion: "(1) the strength of the plaintiff's mark or dress; (2) the similarity between the two marks or dresses; (3) the proximity of the products in the marketplace; (4) the likelihood that the prior owner will bridge the gap between the products; (5) evidence of actual confusion; (6) the defendant's bad faith; (7) the quality of defendant's product; and (8) the sophistication of the relevant consumer group." *Blumenthal Distributing, Inc.*, 2010 WL 5980151, at *10 (citations omitted); *see Playtex Prods., Inc.,* 390 F.3d at 162. "The *Polaroid* factors are not an exhaustive list of relevant considerations, and must not be applied mechanically. Rather, a court should focus on the ultimate question of whether consumers are likely to be confused." *Id.* (internal quotation marks and citation omitted).

Plaintiffs have failed to plead facts regarding likelihood of confusion that would state a claim to relief that is plausible on its face. *See Iqbal*, 556 U.S. at 677. As to defendant Prym, plaintiffs' allege:

> Prym's copying of the ornamental design and overall appearance of Carson's SureGrip™ magnifier was intended to cause, and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of the products with Carson, or as to the origin, sponsorship, or approval of the products by Carson, and constitute a false or misleading representation as to the source or sponsorship of the products or a false designation of origin, all in violation of Section 42(a0 of the Lanham Act, 15 U.S.C. § 1125(a).

(Second Am. Consol. Compl. ¶ 83.) As to defendant Jo-Ann Stores, plaintiffs allege:

Jo-Ann's marketing, offering for sale and sale of a product that copied the ornamental design and overall appearance of Carson's SureGrip™ magnifier was intended to cause, and is likely to cause confusion, mistake, or deception as ot the affiliation, connection, or association of the products with Carson, or as to the origin, sponsorship, or approval of the products by Carson, and constitute a false or misleading representation as to the source or sponsorship of the products or a false designation of origin, all in violation of Section 42(a) of the Lanham Act, 15 U.S.C. § 1125(a).

(Id. at ¶ 84.).  Notably, the foregoing allegations are legal conclusions and merely track the text of 15 U.S.C. § 1125(a).

Moreover, the additional allegations are essentially a formulaic recitation of the *Polaroid* factors.  That is, the conclusory allegations that defendants' marketing and sale of a knock-off of Carson's SureGrip was likely to cause confusion because (a) the "distinctive and non-functional aspects of the SureGrip enumerated above are strongly associated with Carson by the relevant market;" (b) the knock-off "incorporates all of the above enumerated distinctive and non-functional aspects of the SureGrip identically or nearly identically;" (c) knock-offs "are highly proximate products in the marketplace; indeed [defendants] conspired to use its knock-off to eliminate Carson's SureGrip from Jo-Ann's stores and to confuse Carson's customers who used to buy through Jo-Ann's stores;" (d) defendants "acted in bad faith to misappropriate Carson's goodwill in the marketplace by intentionally copying the SureGrip so that Jo-Ann's customers would not be able to tell that a supplier switch had been made;" (e) "Carson's products are of high quality and this quality has allowed Carson to become the largest magnifier marketer in the United States;" (f) "Carson has been forced to enforce its trademarks and tradedress against other in the past who have also sought to trade on Carson's goodwill;" and (g) "due to the relatively low-price of the SureGrip, the relevant customer will spend little time on the purchase and will be more likely confused simply by seeing that the product he or she is buying incorporates the distinctive and non-functional aspects of the SureGrip enumerated above," (*id*. a ¶ 85), are at best

"naked assertion[s] devoid of factual enhancement," *Iqbal*, 556 U.S. at 677, and as such do not allow the Court to draw the reasonable inference that there is a likelihood of confusion.

### (4) Precise Expression of the Character and Scope of the Claimed Trade Dress

As this element suggests, plaintiffs must articulate "the specific elements which comprise its distinct dress." *Landscape Forms*, 113 F.3d at 381; *see Shevy Custom Wigs, Inc.,* 2006 WL 3335008, at *4 (plaintiffs must plead the "elements of their product design with specificity to be afforded trade dress protection). "Laudatory" descriptions without specificity "fail to indicate what unique combination of features makes the trade dress . . . likely to be perceived by consumers as bearing the stamp of their maker." *Landscape Forms*, 113 F.3d at 381-82; *see Shevy Custom Wigs, Inc.,* 2006 WL 3335008, at *5 (holding "sweeping descriptions . . . in fact denote categories of features, not the features themselves"); *see also Elements/Jill Schwartz, Inc. v. Gloriosa Co.,* No. 01 Civ. 904, 2002 WL 1492197, at *6 (S.D.N.Y. July 15, 2002) (concluding description of trade dress to be so general that "plaintiff seeks protection for the idea . . . as opposed to any particular design configuration employing these elements"). Additionally, it is insufficient to merely provide a "laundry list of the elements that constitute a . . . design." *National Lighting*, 601 F. Supp. 2d at 562. Rather the plaintiff must provide "a description of which of plaintiff's trade dress design elements are distinctive and how they are distinctive." *Id.*; *see Shevy Custom Wigs, Inc.,* 2006 WL 3335008, at *5 (same); *see also R.F.M.A.S., Inc. v. Mimi So,* 619 F. Supp. 2d 39, 77 (S.D.N.Y. 2009) (examining cases and concluding that "a plaintiff must provide a sufficiently specific articulation of the . . . distinctive elements of the product['s] trade dress rather than sweeping, overly general descriptions that essentially corner the market on an idea"). Although plaintiffs articulate a description of the design elements that comprise the purported trade dress for the SureGrip™ magnifier, namely the use of a light-dark

color scheme and the general layout and spatial relationship of various elements appearing on the handle of the magnifier (the size, placement, and oval-shape of the label and the positioning of a smaller magnifying lens) and a distinctive ledge on the rim of the magnifying lens, plaintiffs have failed to explain how the asserted trade dress elements for the SureGrip™ magnifier are distinctive. Thus, plaintiffs have failed to aver the requisite precise expression of the character and scope of the claimed trade dress for their magnifier.

Accordingly, given that plaintiffs have not adequately alleged a trade dress claim under the Lanham Act, defendants' motions to dismiss Count Seven of the second amended consolidated complaint are granted.

**(D)     Leave to Replead**

Plaintiffs seek leave to replead if any of the claims are dismissed. Rule 15(a) provides that leave to file an amended complaint should be granted "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Foman v. Davis,* 371 U.S. 178, 182 (1962). However, the "futility of amendment" is a valid basis for denying leave to amend. *Foman,* 371 U.S. at 182; *Williams v. Citigroup,* 659 F.3d 208, 214 (2d Cir. 2011) ("[l]eave to amend need not be granted . . . where the proposed amendment would be futil[e]") (internal quotation marks and citations omitted); *Ruotolo v. City of New York,* 514 F.3d 184, 191 (2d Cir. 2008) (same). "Leave to amend may also be denied where previous amendments have not cured the complaint's deficiencies." *Garcia v. Paylock,* No. 13-CV-2868 (KAM), 2014 WL 298593, at *8 (E.D.N.Y. Jan. 28, 2014) (citations omitted); *see Ariel (UK) Ltd. v. Reuters Grp., PLC,* 277 F. App'x 43, 45-46 (2d Cir. 2008).

In the instant matter, the claims on which the defendants' motions to dismiss are granted are insufficient as a matter of law, and plaintiffs have failed to show how the legal deficiencies can be cured after having been previously granted leave to amend the complaint to address the

very same issues raised in defendants' earlier Rule 12(c) motions.  *See Goodrich v. Long Island R.R. Co.,* 654 F.3d 190, 200 (2d Cir. 2011) ("without any showing that the deficiencies in the complaint could be cured, we must conclude that repleading would be futile").  *See DeJesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 72 (2d Cir. 1996) (observing the Second Circuit has "upheld decisions to dismiss a complaint without leave to replead when a party has been given ample prior opportunity to allege a claim") (collecting cases).   Accordingly, plaintiffs' request for leave to replead is denied.

## CONCLUSION

Based on the foregoing, defendants' partial motions to dismiss the second amended consolidated complaint to Fed. R. Civ. P. 12(b) is granted.  Plaintiff's request for leave to replead is denied.

Dated:  Central Islip, New York  
      March 28, 2014

**SO ORDERED:**


_____/s/_____  
ARLENE R. LINDSAY  
United States Magistrate Judge